( Decided December 11th, 1866. )

---

## John C. Voshell and Gideon Heaton *vs.* Benjamin T. Hynson, William G. Hynson and Jacob Gross.

PRACTICE IN EQUITY: APPOINTMENT OF RECEIVER: INJUNCTION.—An appeal was taken from an order appointing a receiver and granting an injunction, and also from an order refusing to discharge the receiver and dissolve the injunction, upon motion to that effect after answer filed on oath and testimony taken,—HELD:

1st. That in such case the Court cannot assume the allegations of the bill to be true, and thereon sustain the action of the Court below, but it becomes necessary to inquire whether the several propositions laid down in *Blondheim vs. Moore*, 11 *Md. Rep.*, 365, can be sustained so as to justify the Court below in refusing to discharge the receiver and continue the injunction.

2nd. That the material allegations of the bill being denied by the answers, which are not overcome by the testimony, the order granting the injunction and appointing the receiver, as well as the order "continuing said order until final hearing or further order," must be reversed and the cause remanded.

3rd. That the progress of the case precludes the Court from the consideration of the question of the appointment of a receiver without notice to and hearing of the defendants; the rule laid down by the adjudged cases, that the Court will not appoint until the defendant is first heard, unless the necessity be of the most stringent character, is one which can only be enforced upon appeal from the order appointing the receiver.

APPEAL from the Circuit Court for Baltimore city.

This appeal is taken from two orders of the Court below, ( ALEXANDER, J.,) the one passed on the 24th of February, 1866, appointing receivers and granting an injunction, and the other, dated 30th of April, 1866, continuing said order of 24th of February, 1866, until final hearing or further order.

The bill in this case, filed 24th of February, 1866, states that Benjamin T. Hynson and William G. Hynson, trading as B. T. Hynson & Son, on the 20th of December, 1865, obtained a judgment in the Court of Common Pleas of Baltimore city against said John C. Voshell for the sum of $461.94 and costs; and that said Jacob Gross, on the 30th day of December, 1865, also obtained judgment in said Court of Common Pleas against said John C. Voshell for $228.31 and costs, and that both of said judgments are due and unpaid. That on the 31st of January, 1866, the said B. T. Hynson & Son and Jacob Gross caused writs of *fieri facias* to be issued on said judgments, which were levied on the goods and chattels of said John C. Voshell, contained in the "Voshell House," conducted by said Voshell, situated in the City of Baltimore. The bill further charges, that said Heaton, by virtue of a mortgage executed to him by said Voshell, dated the 31st of December, 1864, "claimed to prevent the execution and sale by the sheriff of the goods and chattels of the said Voshell, so levied upon as aforesaid, to satisfy said judgments;" and the special return of

the sheriff of said writs of *fieri facias*, and an inventory and appraisement of said goods and chattels, were filed with said bill. The bill further alleges, that said Voshell had no other property out of which said judgments could be satisfied, and that "since the execution of said mortgage to said Heaton, the said Voshell had been permitted to use and dispose of the goods and chattels mentioned in the said mortgage, and that the said Voshell was then in the possession and use of said goods and chattels," and was then "disposing of them or part of them," and "that a part of the goods and chattels levied on by said sheriff, under the executions aforesaid, are not the same goods and chattels as those mentioned in said mortgage, but are others and different," and that the complainants were "unable to distinguish the one from the other."

The bill further states, "that if the goods and chattels levied upon as aforesaid, be not taken from the possession of said Voshell, that they will be disposed of," and that the complainants "will be subjected to an entire loss of their claim," and that they are without remedy at law. The bill then prays "that a receiver may be appointed to take charge of the goods and chattels levied upon as aforesaid, and to preserve or dispose of the same," under the direction of the Court, and that said John C. Voshell may, by injunction, be restrained from "selling or disposing of or retaining from the receiver any of the goods and chattels levied upon as aforesaid, or intermeddling with them ; and that said goods and chattels may be sold, and the proceeds applied to the payment of the claims of the complainants after paying any prior claims against the same," and for further relief.

On this bill ( which was sworn to by said William G. Hynson,) the Court immediately granted the injunction, and without notice to the defendants, or rule to shew cause, appointed receivers. Whereupon the receivers so appoint-

ed, at once, before filing the bonds required by the order
of Court, commenced to act in the premises, and addressed
a note to said Voshell threatening to sell the property in
the Voshell House, on the following day, "Monday next,"
being the 26th of February.; the note is dated 24th of
February, 1866.

On the 27th day of February, 1866, the said John C.
Voshell and Gideon Heaton, the only parties who were
made defendants, filed their answer to said bill.

The answer admits that said judgments were due and
owing by said John C. Voshell to the complainants. It
then alleges that said John C. Voshell, being indebted
unto the said Gideon Heaton in the sum of $1,687.25,
passed his promissory note therefor to the said Heaton,
dated 31st of December, 1864, and payable one year there-
after, with interest until paid, and to secure the payment
thereof had executed a mortgage of same date to said Hea-
ton. And that no part of said note, or the interest due
thereon had been paid, making the amount then due said
Heaton by said John C. Voshell, on said mortgage,
($1,804.22) eighteen hundred and four dollars and twenty-
two cents. The answer further alleges, that all the goods
belonging to said John C. Voshell, and covered by said
mortgage, would not sell for sufficient even to pay said
note, without the interest due thereon, and that a sale
thereof by a receiver, would be attended by a heavy loss to
said Heaton. It further shews that the bulk of the goods
and chattels so levied upon by the sheriff do not belong to
said John C. Voshell, of which fact the sheriff had notice
at the time that he made the levy ; and again, before he
made his return. The answer further specifies to whom
the principal part of the furniture so levied upon belongs.
It then denies all the material allegations in the bill, more
especially that the complainants could not distinguish the
goods named in the mortgage from those that were levied

upon as aforesaid, but not named therein, and shews that the complainants purposely made no effort whatever to distinguish the one from the other, with the view and design of making it appear to the Court that the property mortgaged was of larger value than the mortgage claim. And there is nothing in the testimony to shew that the complainants ever made the slightest attempt to so distinguish the property in question.

And the answer denies that said John C. Voshell had been "permitted to dispose of the goods and chattels mentioned in the said mortgage," and that he was then disposing of them or part of them," and it avers that the party (Wm. G. Hynson) who made the affidavit attached to the bill, had no knowledge whatever upon which he based such charge, but that he did so with the hope that the complainants might thereby obtain an injunction, and have a receiver appointed, that, in that way, and under the threat of selling all the furniture in the Voshell House, the said B. T. Hynson & Son might extort the amount of their said judgment.

The answer further insists, that if it could be shewn that there was other property in the Voshell House belonging to said John C. Voshell and not covered by said mortgage, that then the complainants had an ample remedy at law, and that the Court below would have no jurisdiction in the premises.

It further shews that there was due and owing to the landlord of the Voshell House for rent thereof, at the time said order of 24th of February, 1866, was passed, granting an injunction and appointing receivers, the sum of $1,200, for which he had caused a distress to be levied. The answer was sworn to by both the defendants.

After this answer was filed, viz : on the 2nd of March, 1866, a commission was issued to take testimony, and on the 12th of March, 1866, the complainants filed a general

replication. On the 15th of the same month the defend-
ants filed a motion to rescind the order appointing receivers
and to dissolve the injunction.

Under the commission, testimony was taken by both
sides. To a large part of the complainants' testimony the
defendants excepted, on the ground that the same were not
applicable to any fact put in issue by the bill. The case
was finally set down for argument, and on the 30th of
April, 1866, the Court, (ALEXANDER, J.,) filed an opinion
and passed an order continuing the injunction and receivers
until "final hearing or further order," from which order,
and from that of 24th of February, 1866, this appeal was
taken.

The cause was argued before BOWIE, C. J., and BARTOL,
GOLDSBOROUGH, COCHRAN and WEISEL, J.

*T. B. Horwitz* for the appellants argued :

1st. The complainants were not entitled to a receiver nor
to an injunction, because "fraud and imminent danger"
were not "clearly proved" before the order in this case for
an injunction and receivers was passed. *Thompson vs. Dif-
fenderffer,* 1 *Md. Ch. Dec.,* 495. *Furlong & Miller vs.
Edwards,* 3 *Md. Rep.,* 112. *Blondheim et al. vs. Moore,*
11 *Md. Rep.,* 374, 375. But so far from fraud in this
case being clearly proved, *it is not even alleged in the bill,*
and there was certainly no proof of imminent danger.

2nd. The defendants were entitled to notice before said
order was passed. *Blondheim vs. Moore,* 11 *Md. Rep.,*
374, 375. *Trieber vs. Burgess et al.,* 11 *Md. Rep.,* 461.
*Nusbaum vs. Stein, et al.,* 12 *Md. Rep.,* 322.

The defendants resided within a very short distance of
the Court, and could, without loss of time, have been noti-
fied of the complainants' application for an injunction and
to have a receiver appointed, and for that reason, also,

were entitled to notice. *Trieber vs. Burgess et al.*, 11 *Md. Rep.*, 461.

Not only were the receivers appointed on the same day that the bill was filed in this case, without previous notice to the defendants, but they actually proceeded to act as receivers before they had even filed the bond required by the order appointing them receivers.

3rd. All the material allegations in the bill are denied by the answer, and the answer is evidence for the defendants; *Hubbard vs. Mobray*, 20 *Md. Rep.*, 167; and the allegations being unsupported by testimony, the motion to dissolve the injunction "must prevail." *Washington University vs. Green*, 1 *Md. Ch. Dec.*, 103. 20 *Md. Rep.*, 167. And especially does the answer deny that the other goods and chattels in the Voshell House cannot be distinguished from those mentioned in the mortgage from Voshell to Heaton; and the testimony proves that the complainants actually refused to receive any information on the subject, and instructed the sheriff to levy on all the furniture in the house. The answer and the testimony shew that the complainants concealed from the Court that they had been informed as to the true ownership of the goods and chattels in the Voshell House.

The most material allegation in the bill, that the defendant, John C. Voshell, "had been permitted to use and dispose of the goods and chattels mentioned in said mortgage," and that he was, at the time the bill was filed "disposing of them, or part of them," is not only emphatically denied in the answer, but the party complainant, William G. Hynson, who made the affidavit attached to the bill, upon the faith of which the Court passed its order, testifies himself that he has "no knowledge whether or not Mr. Voshell has disposed of any of the goods and chattels since the execution of that mortgage."

4th. The utmost to which the complainants could possibly

be entitled, provided they had established that the mortgaged property would sell for a larger amount than would satisfy the mortgage, would be a decree to sell the property mortgaged, "and pay off the encumbrances, and then satisfy" their "own claims."    *Rose & Gauss vs. Bevan et al.*, 10 *Md. Rep.*, 470.    *Harris vs. Alcock*, 10 *G. & J.*, 251, 252.

But the answer and the testimony in this case both show, that the mortgaged property would not sell for sufficient to pay the mortgage, and that its sale by a receiver would be attended by a heavy loss to the mortgagee.    The complainants therefore have no interest whatever in the property covered by the mortgage.

But the complainants insist, that under the authority of the case of *Rose & Gauss vs. Bevan*, 10 *Md. Rep.*, 469, 470, they have a right to have a receiver appointed to sell all the goods and chattels in the Voshell House, without regard to ownership.    It is true that the material averments in the bill filed in this case are an exact copy of the opinion of the Court in the case last above cited.    But are the facts in the two cases analogous?    Not at all.    In *Rose & Gauss vs. Bevan*, the mortgagee, Rose, had allowed a stock of dry goods, (the subject of the mortgage,) contained in the store of Gauss, the mortgagor, to become mixed up with other goods that had been substituted for part of those covered by the mortgage that had been sold, and Gauss "had been permitted to use and dispose of the goods mortgaged to Rose."    And at the very time that the bill was filed in that case, Gauss was actually disposing of the goods out of his store, which fact Gauss, in his answer, admitted.    This last allegation, the most material in the bill filed in this case, that Voshell was (when the bill was filed) disposing of the goods and chattels named in the mortgage, has been shown by the answer and by the testimony of the party himself who made the affidavit

attached to the bill, to be without even the shade of foun-
dation in truth.   In this case, instead of goods that are
being constantly sold out of a store, the property mortgaged
is the furniture of a hotel, not an article of which has been
disposed of since the execution of the mortgage, but on the
contrary, the hotel was, when the receiver took possession
thereof, carrying on its regular business, and has been
doing so ever since, except so far as said receivers have
interfered therewith.

So far from any of the mortgaged property having been
disposed of by Voshell, the evidence of Griffith and Kleff,
shows that furniture of large value has been purchased by
Mrs. Voshell and said Kleff since the date of said mort-
gage, and that it, together with other furniture that
belonged to said Kleff, have been placed by them in the
Voshell House.   Where then do we find in this case the
"stringent necessity," the "imminent danger" the "fraud
clearly proved," ( 3 *Md. Rep.*, 112, 11 *Md. Rep.*, 374,)
that are conditions precedent to the appointment of a
receiver?   Where the ground for an injunction ?

But the decision in the case of *Rose & Gauss vs. Bevan,*
is based upon and does not go a step farther than *Harris
vs. Alcock,* (see 10 *Md. Rep.*, 470,) and the former case is
one of the authorities relied upon by the appellees in *Blond-
heim vs. Moore,* 11 *Md. Rep.*, 370, and therefore, was con-
sidered by the Court in that case, and shews the construc-
tion that it intended to put upon *Rose & Gauss vs. Bevan.*

5th. The *bona fides* of the mortgage claim is not even
called in question in the bill, and it is shewn by the mort-
gagor and the mortgagee, in their answer, to be *bona fide ;*
and the complainants' own witness, McShane, further
proves it to be *bona fide.*

6th. The landlord's claim for rent, which has priority
over all other claims, and the mortgage claim would cover
the value of all the property levied upon in the hotel,

except that belonging to the boarders ; the complainants, therefore, can have no interest in it whatever. But the major part of the furniture levied upon and appraised in the Voshell House, is clearly proved to be the property of those not parties in this suit.

7th. If the complainants show that Voshell has other property than that named in the mortgage, then they have an ample remedy at law, and the Court below had no jurisdiction in the premises.

No appearance for the appellees.

Bowie, C. J., delivered the opinion of this Court.

There is no subject on which this Court has recently, more fully and frequently announced the principles which should govern the action of Courts of Equity, than on the exercise of the power of appointing receivers and issuing injunctions to preserve property.

From *Blondheim vs. Moore*, 11 *Md. Rep.*, 365, to *Haight & O'Connell vs. Burr*, 19 *Md. Rep.*, 136, the essential averments of a bill praying for a receiver and injunction, and the course to be pursued, have been broadly and emphatically prescribed. In the case first mentioned, the late learned Chief Justice reduced the result of previous decisions to these five propositions :

1st. The power of appointment is a delicate one and to be exercised with great circumspection.

2nd. It must appear the claimant has a title to the property, and the Court must be satisfied by affidavit that a receiver is necessary to preserve the property.

3rd. There is no case where the Court appoints a receiver merely because the measure can do no harm.

4th. That fraud or imminent danger, if the intermediate possession should not be taken by the Court, must be clearly proved.

5th. That unless the necessity be of the most stringent character, the Court will not appoint until the defendant is first heard in response to the application.

The last two propositions were cited with approbation in *Haight & O'Connell vs. Burr*, as rules, deduced from an examination of all the cases, to which the Courts should adhere.

This appeal is not only taken from the order appointing the receiver and granting the injunction, but also from the order refusing to discharge the receiver and dissolve the injunction upon motion to that effect, after answers filed on oath and testimony taken.

The bill in this case is framed after that in *Rose & Gauss vs. Bevan*, 10 *Md. Rep.*, 470, where it was said "the bill undoubtedly makes a good case," and the Court below refers to that case, as its authority for its action in this. The question is not here, as in that, whether the "receiver was originally properly appointed and the injunction properly issued. There, as in the case of *Haight & O'Connell vs. Burr*, the appeal being from the appointment of the receiver and issuing of the injunction, the Court assumed the allegations of the bill to be true and sustained the action of the Court below. Here, the answers being filed and testimony taken upon the motion to discharge and dissolve, we have to inquire whether the propositions above laid down can be sustained so as to justify the Court below in refusing to discharge the receiver and continue the injunction.

There is no fraud imputed in the bill to any of the parties. The allegation that the defendant, Voshell, has been permitted to use and dispose of the goods, and is disposing of them, is denied by the defendants' answer. It is also denied that the defendant, Voshell, is in possession of the goods.

The hypothesis, "that if the goods and chattels levied upon as aforesaid, be not taken from the possession of the

said Voshell, they will be disposed of and the complainants subjected to an entire "loss of their claim," must fall with the premises on which it was founded.

The answers of the defendants, being upon oath, must be conclusive on these points at this stage of the proceedings, unless they are overcome by the testimony. *Hamilton vs. Whitridge,* 11 *Md. Rep.,* 128. *Bouldin & Others vs. Mayor and City Council of Baltimore,* 15 *Md. Rep.,* 21, 22. *Code Public General Laws, Art.* 16 *sec.* 103.

There is conflicting and contradictory evidence with regard to the possession of the property, but not such as to discredit the answers. The allegation of the disposal of the property by Voshell is wholly unsupported. It is immaterial to inquire on this appeal into the value of the property,—whether it is more or less than the incumbrances which are prior to the judgments and executions of the complainants. That is a proper subject for consideration upon final hearing. The argument of the appellees, upon that branch of the cause, anticipates the question.

We are also precluded, by the progress of the case, from considering the question of the appointment of a receiver without notice to and hearing of the defendants. The rule laid down in the cases cited, that the Court will not appoint until the defendant is first heard, unless the necessity be of the most stringent character, is one which can only be enforced upon appeal from the order appointing the receiver.

The case of *Rose & Gauss vs. Bevan,* relied on by the Court below for its action in this respect, although cited by the appellees in *Blondheim vs. Moore,* and decided only the term before, was not referred to by the Court as one of the cases from which the leading propositions were deduced, and in that case, although the circumstances were equally stringent, a contrary course was adopted.

We cannot forbear to remark, that the propriety of such a course is made manifest by the extraordinary assumption

of power which the receiver in this case threatened to exer-
cise "unless the matter is settled to-day ;" a threat which
gave too much color to the argument that the power of the
Court of Equity was invoked to intimidate, rather than
preserve the property in dispute.

The order of the Court below of the 24th of February,
1866, granting an injunction and appointing a receiver,
and also the order of said Court "continuing said order
until final hearing or further order," are reversed with
costs of this appeal to the appellants, and the cause
remanded.

*Orders reversed and cause remanded.*