John N. Heflebower *vs.* Samuel D. Buck, N. Franklin Neer, and Benjamin F. Cator.

*Partnership—Injunction—Receiver—Equity Practice.*

The following stipulation under seal was appended to certain articles of partnership between B., H. and N.: "In consideration of the fact that B. has the largest amount of money in the business, it is understood and agreed, that when the firm is dissolved by limitation or otherwise, the said B. shall have charge of the books and settle the business, and the business shall be wound up as rapidly as practicable, as set forth in Article five of this agreement." In accordance with this agreement, B. upon the dissolution of the partnership took possession of the books, assets, and all the partnership affairs, for settlement. Among the creditors of the firm were said B. and N. Immediately after the dissolution, B. and N. entered into a new partnership with C. to carry on the same character of business as that which had been carried on by the former partnership. The stock of the old firm remaining on hand was, by consent of all concerned, appraised, and B. and N. turned it into the new concern at the appraised value, and they credited their claims with a proportionate part of the valuation, C. paying his proportion in cash. A bill was filed by H. against B., N. and C. for an injunction and the appointment of a receiver, and for an account of the affairs of the old partnership. On the application for the injunction and receiver, which was heard upon bill, answer, and the exhibits filed. it was HELD:

1st. That upon such an application as this the Court does not determine the questions arising between the partners; the only question for consideration being, whether, upon the facts disclosed, there is an apparent necessity for either an injunction, or a receiver, to protect the assets of the partnership until the rights of the partners can be definitively determined upon full hearing of the case.

2nd. That the question of the propriety of granting an injunction or of appointing a receiver, was not to be determined upon the allegations of the bill alone, but the averments of the answer were also to be considered.

3rd. That the fact that B. and N. took the stock of the old firm at a valuation placed upon it by third persons, selected by agreement of all concerned, in payment of debts due them, could hardly, as between the partners, under the circumstances of the case, be regarded as misappropriation of the assets.

4th. That the interest of the defendants, as well as that of the complainant, must be considered in an application of this kind; and it was manifest that to grant the injunction and appoint a receiver as prayed at that stage of the settlement of the affairs of the partnership, then nearly at the close, would be attended with no substantial good to any of the parties concerned, but would likely be attended with unnecessary trouble, perplexity, and expense, if not with even more serious mischief to the real interests involved.

5th. That the charge of the books and the settlement of the business of the old firm having been by express stipulation confided to B. the Court would interfere to take out of his hands the matter thus confided to him, with great reluctance, and only upon the most cogent reasons.

6th. That in such case there must be some clear breach of duty, or conduct amounting to fraud, or the facts must be such as to show a real danger to the partnership assets thus confided to the administration of the settling partner, by reason of insolvency or otherwise.

7th. That as B. insisted upon his rights under the contract as settling partner, and denied that he had done anything to forfeit his right of possession, there was no sufficient ground for displacing him from his position by granting an injunction and appointing a receiver.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from an order refusing an injunction and receiver as prayed in the bill of complaint. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Edward Otis Hinkley*, for the appellant.

Partners have a right to have their creditors paid before distribution of assets. In *Hall vs. Claggett*, 48 *Md.*, 235,

239, partners were engaged in planting. Debts are to be paid first. In *Gable, Trustee vs. Williams*, 59 *Md.*, 52, the surviving partner made an assignment to pay his individual creditors. Partners have a right to have their debts paid first. In this case the partnership articles expressly provided for this, and there is no pretence that there was any other agreement.

Partners cannot create new obligations after the partnership is dissolved.

In *Rose vs. Coffield*, 53 *Md.*, 23, there was a question of notice of the dissolution, and there was some accommodation paper. It is here said to be a familiar principle. *Ellicott vs. Nicholls*, 7 *Gill*, 100; *Hurst & Berry vs. Hill*, 8 *Md.*, 399; *Hopkins vs. Boyd*, 11 *Md.*, 107.

On dissolution, if the surviving partner or the settling partner behave *unrighteously*, a receiver is of course. *Wilson vs. Greenwood*, 1 *Swanston*, 481; *Collyer on Partnership*, sec. 354; *Law vs. Ford*, 2 *Paige Ch.*, 310; *Marten vs. VanSchack*, 4 *Paige Ch.*, 479; *Sloan vs. Moore*, 37 *Penna.*, 217; *Walker vs. House*, 4 *Md. Ch. Dec.*, 43; *Speights vs. Peters*, 9 *Gill*, 472–479; *Stevens vs. Yeatman*, 19 *Md.*, 480; *Whitman vs. Robinson*, 21 *Md.*, 30–43; *Shannon vs. Wright*, 60 *Md.*, 520.

*Randolph Barton*, for the appellees.

Alvey, C. J., delivered the opinion of the Court.

The bill in this case was filed by the appellant, Heflebower, against the appellees, in which it is prayed that an injunction may issue to restrain Buck and Neer, two of the appellees, and former copartners of the appellant, from "in any manner intermeddling with the business or assets of the firm of Buck, Heflebower and Neer;" and that a receiver of such assets may be appointed. The bill also prays that accounts may be taken of and concerning

all partnership dealings and affairs in which the appellant may be concerned.

It appears that there were three different partnership agreements entered into for conducting the partnership affairs of Buck, Heflebower & Neer,—the first providing for the formation of a partnership between the parties to conduct the wholesale boot and shoe business in the City of Baltimore, to commence July 1st, 1874, and to continue for three years; the second, dated January 1st, 1878, to continue the same business for one year, and extended to December 31st, 1879; and under the third, dated December 27th, 1879, by renewal, the business of the partnership was carried on until January 1st, 1884, when the partnership was dissolved. The subsequent agreements or articles were but modifications in some respects of the first, and the partnership, practically, was continuous from July 1st, 1874, to January 1st, 1884, nearly ten years. By article 2 of the last agreement, it was provided that the capital of the new firm should be contributed thus: After all the debts of the old firm were paid, (including the amounts to the credit of Buck & Neer, as loans to said firm, being part of their drawings not expended by them,) the capital should be returned *pro rata,* and the amount so realized should be the capital of the new business, and should be at the risk of the same. Article 5 of the same agreement provided that when the firm should be dissolved by limitation or otherwise, the debts should be first paid, and then the capital returned, and after which the profits, if any, should be distributed *pro rata,* as realized. And appended to this last agreement is this stipulation under the hands and seals of the partners, and of date November 24th, 1880:

"In consideration of the fact that Saml. D. Buck has the largest amount of money in the business, it is understood and agreed, that when the firm is dissolved by limitation or otherwise, the said Buck shall have charge of the

books and settle the business, and the business shall be wound up as rapidly as practicable, as set forth in Article 5 of this agreement. And in the event of the death of the said Buck, a majority of the firm (and the personal representatives of the said Buck, or other deceased members of the firm, if others should be dead,) shall elect who shall take charge of the books and settle up the business."

In accordance with this agreement, Buck, upon the dissolution of the partnership, took possession of the books, assets, and all the partnership affairs for settlement. According to the allegations of the bill, the amount of stock on hand, including furniture and fixtures, was about $42,000, besides a large amount in bills receivable and open accounts, and about $1,025 in cash. The supposed amount of indebtedness of the firm, at the time of dissolution, was about $106,122.61, according to the allegations of the bill; but according to the averments of the answer, a very much larger amount, exceeding $170,000. Among the creditors of the firm were Buck and Neer, to the extent of about $40,853.20. Immediately after the dissolution of the firm of Buck, Heflebower & Neer, Buck and Neer entered into a new partnership with B. F. Cator, under the firm name of Buck, Cator & Neer, to carry on the same character of business as that which had been carried on by the former partnership of Buck, Heflebower & Neer. The stock of the old firm remaining on hand was, by consent of all concerned, appraised, and Buck and Neer turned it into the stock of the new concern, at the appraised value, and they credited their claims with a proportionate part of the valuation, Cator paying his proportion in cash. This transaction is charged in the bill as a mal-appropriation of the partnership assets; but it is averred in the answer of the appellees that the stock thus disposed of was transferred to the stock of the new firm with the knowledge of the appellant, and that he made no objection at the time it was done, and that it was most beneficially done for all con-

cerned. The bill further charges that although Buck had, besides the stock and fixtures, valued at about $42,000, received and collected, since the dissolution, over $100,000 of good accounts and bills receivable, he had not, at the time of filing the bill, paid the debts of the late firm, but that there was then a large amount still remaining due and unpaid, with interest accumulated since Jan. 1st, 1884, then more than fifteen months; and that as far as the appellant knew, there was due from the late firm on Jan. 1st, 1885, and still remained due at the time of filing the bill, over $15,000. It is also alleged in the bill that there still remains uncollected, of the debts due to the late firm, an amount exceeding $30,000, and that much of such amount may be lost by the neglect of Buck, the settling partner. These allegations of the bill are strongly controverted by the answer; and the balance of the firm debts still remaining unpaid, averred by the answer to be only $13,808.75, the appellees offer themselves ready and willing to pay at once; but they aver that such payment will in no manner benefit the appellant.

The appellant further charges that the books and accounts of the partnership affairs have been erroneously and deceptively kept by Buck as the settling partner; and that he has applied for statements of the accounts, but that they have been withheld from him, in violation of his rights. He states, however, that he has no knowledge of book-keeping himself, and therefore has no personal knowledge of the true state of the accounts, but makes his charges of false and erroneous entries in the books, and incorrect and deceptive methods of keeping and adjusting accounts, upon information derived through others. But the appellees utterly deny the truth of these charges. They deny all fraud and collusion charged in or imputed by the bill, whether in regard to the mode of keeping the accounts or otherwise; and they aver that the assets of the firm, so far as available, have been legally and prop-

erly applied, as the accounts will clearly show. They aver that the appellant had frequently examined the books, and knew well the real state of the accounts; and that the books and accounts of the concern were always open to his inspection, and were of ready access whenever he desired to examine them, and that the book-keeper was always at hand ready and willing to give any information needed in regard to the state of the accounts. The bill contains no charge whatever that there is any risk or danger of loss to the appellant by reason of insolvency of either Buck or Neer.

It was upon the bill, answer, and exhibits, that the application for the injunction and the appointment of a receiver was heard;—both bill and answer being sworn to by the parties filing them. The Court refused to grant the injunction, or to appoint a receiver, but offered to direct an account to be taken of the partnership affairs, if moved for by the appellant.

Upon such an application as this the Court does not determine the questions arising between the partners, the only question for consideration being, whether, upon the facts disclosed, there is an apparent necessity for either an injunction, or a receiver, to protect the assets of the partnership until the rights of the partners can be definitively determined upon full hearing of the case. *Blakeney vs. Dufaur*, 15 *Beav.*, 40.

The general principles upon which the Court acts upon prayers for injunction and receiver have been repeatedly announced, and their application is substantially the same in cases involving partnership affairs, as between the partners, as in other cases where such remedy is invoked. *Speights vs. Peters*, 9 *Gill*, 475; *Blondheim, et al. vs. Moore*, 11 *Md.*, 365; *Voshell & Heaton vs. Hynson, et al.*, 26 *Md.*, 83; *Walker, Adm'r, &c. vs. House*, 4 *Md. Ch. Dec.*, 39. It is certainly not every case, however, of alleged mismangement by one partner of the partnership assets

that will entitle a co-partner to the extraordinary remedy by injunction and receiver. To grant such relief in any case is a stringent measure on the part of the Court; and the power should never be exercised except in a strong case, and where the Court can see that the condition of things is such as to render it necessary for the safety or protection of the partnership assets that it should so interpose. In this case we cannot perceive sufficient ground for either granting an injunction or appointing a receiver. It is not made apparent, from any established fact in the case, that the assets of the late firm of Buck, Heflebower & Neer are in any such real danger from actual mismanagement or unrighteous conduct on the part of the partner entrusted with the settlement of the affairs of the concern, as to require that the power of settlement should be withdrawn from him. The bill contains some strong charges, and some that impute bad faith in the settlement of the affairs of the late firm; but we are not to determine the question of the propriety of granting an injunction or of appointing a receiver, upon the allegations of the bill alone. The averments of the answer are also to be considered on this application; and the answer appears to be full and frank, in meeting all the charges of the bill upon which reliance could be placed for the interposition of the Court. All imputation of fraud or misconduct of any kind in the settling partner is emphatically denied, and the circumstances of each transaction complained of are stated by the appellees, which give force to their denials. That the late firm of Buck, Heflebower and Neer were largely indebted to Buck and Neer individually is not controverted; and the fact that they took the stock of the old firm at a valuation placed upon it by third persons, selected by agreement of all concerned, in payment of the debts due them, can hardly, as between the partners, under the circumstances of the case, be regarded as misappropriation of the assets. And the charge in the bill that

statements of the partnership accounts had been refused to the appellant, is answered in a manner that deprives it of all force as evidence of misconduct or bad faith towards the appellant. The interest of the appellees as well as that of the appellant must be considered in an application of this kind ; and it is manifest that to grant the injunction and appoint a receiver as prayed, at this stage of the settlement of the affairs of the partnership, now nearly at the close, would be attended with no substantial good to any of the parties concerned, but would likely be attended with unnecessary trouble, perplexity, and expense, if not with even more serious mischief to the real interests involved.

But there is an additional reason for the Court's refusal to interpose in this case, to grant an injunction and appoint a receiver, whereby all participation of the partners, or either of them, in the settlement of the affairs would be excluded. The partners, by their own stipulation, have agreed that in consideration that Buck had the largest amount of money in the business, he should, when the firm was dissolved by limitation or otherwise, have charge of the books, and settle the business. Generally, upon the dissolution of the partnership, each partner is entitled to assist in collecting the assets, in paying the debts, and in winding up the affairs of the firm ; and any interference with this mutual right, or the exclusion of one partner by the other or others from the enjoyment of it, affords a sufficient ground to the Court for taking the management of the partnership affairs into its own hands and control. But here, the parties by their own agreement, have delegated this mutual and common right to one of the partners; and where that is the case the Court interferes, to take out of the hands of the settling partner the matter thus confided to him, with great reluctance and only upon the most cogent reasons. In such case there must be some clear breach of duty, or conduct amounting to

---

Heflebower *vs.* Buck, *et al.*

---

fraud, or the facts must be such as to show a real danger to the partnership assets thus confided to the administration of the settling partner, by reason of insolvency or otherwise. *Drury vs. Roberts,* 2 *Md. Ch. Dec.,* 157; *Walker vs. Trott,* 4 *Edw. Ch.,* 38; *Waters vs. Taylor,* 15 *Ves.,* 10, 19.

In the case last referred to, that of *Waters vs. Taylor,* the Lord Chancellor said: "In this instance, all the parties have not an equal right to the management: this is not the ordinary case of a partnership, where each partner has as much right to interfere as any other. But here one individual is by express contract placed in the situation of manager. The object of this interlocutory motion is therefore in the nature of judicial relief against the effect of the express contract; and the Court ought therefore to be perfectly sure, that the conduct of the defendant has been such as to make it proper, from regard to the interests of others, as well as himself, that he should be removed from that situation in which the contract placed him. He may insist, that he cannot be displaced, unless the Court is prepared to decide, that he is not entitled to the benefit of the contract; as he is not, if he cannot perform the duty, or if he acts against it." In this case Buck insists upon his rights under the contract as settling partner, and denies that he has done anything to forfeit his right of possession; and, upon the principle just stated, as the case is now presented, we discover no sufficient ground for displacing him from his position, by granting an injunction and appointing a receiver. The order appealed from must, therefore, be affirmed, with costs.

> *Order affirmed, and*
> *cause remanded.*

(Decided 23rd June, 1885.)