## JOHN S. VANDEGRIFT vs. WILLIAM A. BURKE.

*Easement of Way—Existence of Right of Way Across Another's Land to Reach a Private Alley—Use of Alley Not Under Claim of Right.*

A right of way over the land of one party in order to reach the private road of another party cannot be supported as a way of necessity or as one acquired by prescription unless there exists a right to use the private road of the other party.

The plaintiff in this case claimed a right of way over defendant's lot, adjoining his own, in order to reach a private alley running to a street, and the action was brought to recover damages for the obstruction of the way over defendant's lot. The evidence showed that although the alley in question had been used by others than the plaintiff for a considerable length of time, yet this use had not been under a claim of right, but by permission of the owner thereof who sometimes erected gates across it, and that plaintiff's own use of the alley had not been adverse and continuous for a sufficient length of time to create a right of way by prescription. The deed to plaintiff conveying his lot made no mention of the right to use either way. *Held*, that since the plaintiff had failed to show the possession by him of a right to use the alley he is not entitled to recover damages for the obstruction by the defendant of the way across the lot to the alley.

When a right of way is claimed to have been established by prescription, the testimony of the parties who used the way is admissible to show by what authority they did so.

Appeal from the Circuit Court for Kent County (MARTIN and BROWN, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*James P. Gorter* and *Hope H. Barroll,* for the appellants.

The evidence is abundant and convincing that from 1855 until Burke built up his fence in 1901, the occupants of the premises now belonging to Vandegrift, crossed the Burke lot to get to the eight-foot alley. That it was not only used during all those years as a means of ingress and egress to the rear of the Vandegrift property, but was used to carry in the wood and coal, and to take out the refuse slops and night soil from the privy on the Vandegrift property; and that there was no other way except through the house. There was for many years a fenced-off alley at the rear of the Burke lot along the Wickes fence. The fence between this small alley and the yard many years ago fell down, and after it was down the occupants of the Vandegrift property crossed the Burke yard. The testimony shows that during all these years the Burke property, and the eight-foot alley was used by the occupants of the Vandegrift property.

When Vandegrift bought this property from Ellis in 1886, Ellis owned both lots. There was a privy in Vandegrift yard that had to be cleaned from time to time. There was no fence between Vandegrift lot and Burke lot, the occupant of the former had for years used the yard of the latter first through the fenced-off alley at the rear, and afterward they crossed at place, not only as a means of ingress and egress, but to bring in fuel and take out filth. This user was *apparent,* it was continuous, and had been so for as long as we can learn of the two lots, and it was absolutely necessary not only for the reasonable use of the property, but for the habitable use thereof. No sane man would have bought the Vandegrift property had he supposed that he would have had to carry the matter from his privy through his dining room and shop.

This was the situation when Vandegrift bought it, and this was the state of affairs when Ellis sold in 1901 to Burke.

The right of way was an obvious and continuous easement which passed to plaintiff by implication. *Eliason* v. *Grove,* 85 Md. 215; *Burns* v. *Gallagher,* 62 Md. 410; *Mitchell* v. *Seipel,* 53 Md. 251; *Janes* v. *Jenkins,* 34 Md. 11.

The eight-foot alley when originally laid out by Wescott or some of his ancestors or predecessors in title was laid out open, and used for the benefit of all the property. It was a right of way. If so and Wescott retained it, as he granted away first one lot then another, it would pass by the doctrines of implied grant to all who purchased. As far back as the recollection of any of the witnesses go we find the eight-foot alley the means by which the postoffice property, the Vandegrift property, the Burke property and the Wickes property connected with Cross street. The fences marked it and the alley leading to it, and the use of it was essential to the reasonable enjoyment of the property that we find connecting with it.

The evidence shows that there has been an adverse continuous open user of the eight-foot alley by the owners and occupants of the Vandegrift lot, for over 50 years. There can be no doubt of the character of the user being adverse. The nature of the user shows it was adverse. It is impossible for it to have been permissive, for no one knows from whom the permission should come. The defendant's counsel tries to make out by parol evidence by the witness, who sold the Vandegrift lot with the right, and now wishes to repudiate, that Wickes gave permission, but when he offers the lease he shows that Wickes not only was not the owner of the right of way, but that he paid for using it and was not able to buy it. It is an old right of way open there before most of us were born for the use of all the property connected with it, and the occupant of the Vandegrift property has as much right to use it for the matters connected with the rear of his house as he has to use Cross street for the more showy, but none the less necessary purposes, appertaining to the front.

*William W. Beck* and *Jas. W. Chapman, Jr.,* for the appellee.

Page, J., delivered the opinion of the Court.

It is alleged in the declaration in this case the appellant is

entitled to a way over the land of the appellee to and from a
private alley, and along said alley to Cross street, "for the
more convenient occupation of his land," and that the ap-
pellee "has deprived and does deprive him of the use of said
way." The pleas are 1st no right of way over "the alley,"
and 2nd no right of way over the appellee's land.

The pleadings therefore raise two issues, first has the ap-
pellant a right of way over the appellee's land to the alley
(called in the record Wickes' alley), and second has he a
right of way over and along Wickes' alley to Cross street?

The record shows that the parties are respectively the
owners of adjoining lots fronting on Cross street in the town
of Chestertown. Wickes' alley lies along the southeastern
side of the lot of the appellee and runs from Cross street,
northwesterly by and with the lot to the property of other
persons, (whose names do not clearly appear from the evi-
dence). The location of the lots of the parties hereto, and of
Wickes' alley will clearly appear by reference to a plat marked
"Plat W. W. Beck," filed herewith for illustration.

**PLOT W. W. BECK.**

(Filed Jan. 13, 1903.)

In May, 1884, a certain Thomas Ellis became the owner of both lots. In 1886 he sold and conveyed to the appellant the lot designated on the plat "Vandegrift property," and in July, 1901, sold and conveyed to the appellee the other lot, designated as the "Burke property." The deed to the appellant dated the 18th November, 1886, is for a specific lot described by metes and bounds and contains no reference, in any manner, to a right of way over, across or along the property of the appellee or Wickes alley. But the appellant contends that he is entitled to a right of way along and over Wickes alley by prescription ; and over the lot of the appellee, by reason of the fact, as he alleges, that during the unity of possession and ownership of the two lots, there had been and was at the time of the conveyance to him, a continuous apparent and necessary user of the appellee's lot for the benefit and more convenient occupation of his own lot, so that the appellant became and was entitled by virtue of the conveyance to an easement as broad and extensive as the user indicated. Inasmuch as Wickes alley is a private way, it is obvious that an easement cannot arise to cross the appellee's lot, in this manner, unless it is further established that the appellant is entitled to the use of Wickes alley, to enable him to reach Cross street. It is alleged in the *narr.* that the right to cross the appellee's lot, is to Wickes alley, over which he has a right of way to Cross street, which is a public highway.

In *Oliver* v. *Hook*, 47 Md. 310, where the right of way claimed was partly on the land of the appellee and partly across the lands of Cockey, a stranger to the proceedings, the Court said : "Whether the appellant's claim, to the right of way through the land of the appellee can be supported as alleged, either as a way of necessity or as a way acquired by prescription or user, conceding all other obstacles to be removed, depends upon the right or interest to which he has shown himself entitled, in that portion of the way that leads through the private road over the lands of Joshua F. Cockey to intersect the public highway. The *termini* of the way are material to be proved as alleged ; and if the proof stops short

of either it is fatal to the right claimed." The Court below instructed the jury that there was no evidence legally sufficient to entitle the plaintiff to recover. This instruction will be unassailable, if it be found that the evidence is legally insufficient to enable them to find the right of way over Wickes alley, although there might be a different state of the proof as to the right to cross the appellee's lot. We will, therefore, examine the evidence as to appellant's rights in Wickes alley. In the case already cited, *Oliver* v. *Hook*, was stated only familiar principles, where it was said that in order to establish a right of way by user, it must be shown that the "use and enjoyment of the way has been continuous and uninterrupted for at least twenty years before the obstruction complained of; and that such user was adverse, that is, under a claim of right, with the knowledge and acquiesence of the owner of the land; and the burden of proof is on the party claiming the easement."

On the 25th of May, 1850, George B. Westcott, who was then presumably the owner of the fee in Wickes alley, leased to Simon Wickes, "one right of way, eight feet wide, as now used by the said Wickes to Cross street," for the term of ninety-nine years at a rent of six dollars per annum. In view of the consideration herein expressed it is not necessary to inquire whether this lease passed to Wickes an exclusive right to the use of the alley. It may be stated, however, that there is no evidence that Westcott or any person claiming under him, ever exercised any rights over the alley, after the date of the lease; and it appears that the persons in the neighborhood, ever after regarded Wickes as the exclusive owner of the way. In August, 1873, Thomas S. Bordley, as attorney for John Bordley, and Simon Welch and wife, conveyed the two lots owned by the parties to this proceeding, to Mary E. Chaney. And in describing one of the outlines of the property, referred to the alley as running by Simon Wickes lot, "until it intersects the right of way eight feet wide heretofore granted by the said George B. Westcott to said Simon Wickes, &c." Chaney conveyed to Ellis in 1884 and in her

deed is the same allusion to the alley. In neither deed is there set up any claim to the use of the alley. Ellis testified· in this case that he used the alley by the permission of Mr. Wickes and that he had told the appellant that he had no right to the alley. These statements by Ellis were objected to at the trial and the rulings of the Court allowing them to the jury constitute the appellant's first, second, third and fourth exceptions. But the contents of the deed to Ellis or that of Ellis to Vandegrift, is not in any respect affected by the evidence. It referred to property and property rights not covered by either of them. There is no theory upon which the right of the appellant to the use of Wickes alley, could arise by implication from the grant by Ellis of the Vandegrift property, there being no express words in that deed to include such a right. Indeed the right is not claimed by implication derived from the grant but by long continuous and adverse user of Vandegrift and those under whom he claims. To establish this the testimony of those who have occupied the lot is competent, to establish how and by what authority they in fact made use of the alley. The rulings of the Court in admitting this testimony, were without error. Ellis states clearly and distinctly that he had never used the alley with a claim of right, but only by the permission of Wickes. Vandegrift acquired ownership of the lot in 1886, and even if he had ever since claimed the right to use the alley, the period up to the date of the obstruction by the appellee, is too short for the user to ripen into title.

It appears, therefore, from this statement that the preceding owners at least as far back as 1873, have never set up any claims to rights in the alley. But a closer and more detailed examination of the evidence, leads to the same result. There is no other testimony in the record from which the jury could legally infer that prior to Vandegrift's becoming the owner of his lot, any of the persons who have occupied that lot have ever claimed a right to the use of the alley. It is true Sappington, who for a short period during Canady's ownership occupied the lot or a part of it stated that he used it with a

claim of right, but he further said that Canady paid five dollars a year for the privilege. Needles, who used the alley during the years 1883 and 1884, said he thought at the time that Mr. Wickes wouldn't "object to it" and if he had "he would quit." Jester said, "we used it, we had a right like other people," that Wickes allowed them to use and if he objected he supposed he would have had no right. It seems to have been supposed by all who used it, that Mr. Wickes who was the apparent owner, permitted the use. There seems to be no particular reason why Wickes should not have done so, ordinarily. It led from Cross street, to the interior of the square in which it was located. The use of it by persons who found it convenient to pass through it, was not injurious to him, so long as no adverse claim was set up, by which his title could be affected. Yet he sometimes found it convenient to close it, and such times placed gates across the alley and maintained them at his pleasure. But when he did not thus exercise his right as owner of the way, he permitted anyone to pass along it, who chose so to do. Somewhere in the vacant space in the interior of the square were located at different times the carriage shop of Chapman & Lamdin, a liquor shop and other buildings and those choosing to approach these places through the alley, were allowed to do so. Even those whose business or pleasure led them to visit the Toulson lot, the postoffice and other places on High street, sometimes reached their destination through the same route. But there is no evidence that any of these persons ever set up a claim to be entitled to a right of way through the alley. In *Thistle* v. *Frostburg Coal Co.*, 10 Md. 147, the Court said in reference to the kind of user that would constitute adverse possession, that "the acts and ownership relied on, must be such as will comport with the character of the claim or title of him who asserts ownership against all the world and should not consist of acts merely which might be done by any and all persons with impunity in common with him who claims to be the real owner;" and so in the case at bar, to establish the adverse character of the user, there should be shown such

acts as would comport with the character of the claim or title of the appellant, so that the real owner knew or ought to have known that the party was claiming the legal right to so deal with the property.

Without further prolonging the discussion of this subject, we will only state, that after a careful review of the evidence, we have reached the conclusion, that the user shown by the proof, is not legally sufficient to establish the claim of the appellant as to the alley, and that therefore the Court below committed no error in taking the case from the jury.

The judgment will be affirmed.

*Judgment affirmed.*

(Decided December 3rd, 1903.)