# GEORGE W. EASTER and WIFE

## *vs.*

# OVERLEA LAND COMPANY OF BALTIMORE CO.

*Roads: right of way; prescriptive right; burden of proof. Injunction: answer and proof; burden on plaintiff; when bill not retained.*

Where a bill for an injunction is heard on bill, answer and proof, the burden is on the plaintiff to establish the right by a clear preponderance of proof.                                    p. 630

Permissive user of a road by neighbors does not make it a public road; user by license or permission is not adverse.

pp. 632, 633

In order to establish a public way by prescription, the user must be adverse.                                    p. 633

When an injunction asked for is not ancillary, but is the primary and principal relief prayed for, there is no reason for retaining the bill if, upon hearing, upon bill and answer, it appears to the Court there is no ground for issuing the injunction on its merits.                                    p. 635

*Decided January 10th, 1917.*

Appeal from the Circuit Court for Baltimore County. In Equity. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Richard S. Culbreth* (with whom was *Harry M. Nitzel* on the brief), for the appellants.

*C. Alex. Fairbank, Jr.,* (with whom was *Edward H. Burke* on the brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court for Baltimore County dissolving an injunction and dismissing the bill of complaint of the appellants.

The bill alleges that the plaintiffs are the owners of a "tract of land on the Bel Air road," in Baltimore County, "known as Fairlee," which they acquired by deed from John Marx in 1900; that "nearly seventy years ago a road was laid out along the western boundary of said tract by one Job German for convenient access to his lands from the Bel Air road, his said lands adjoining the tract now owned" by the plaintiffs, "on the north;" that "ever since said road was laid out, it has been used by the predecessors" of the plaintiffs "in the title to the tract now known as 'Fairlee' " and by the public generally, "and because of the general, unobstructed and continuous user of said road for more than twenty years, it has become a public road;" that "shortly after the acquisition by them of the tract aforesaid, the plaintiffs laid off a portion thereof in lots of convenient size for sale as building lots;" that some of the lots front on said road which has been used continuously by the purchasers of the lots, and by the plaintiffs as the owners of the "remaining portion of said tract bordering thereon" as the "only convenient means of access to that portion of the tract;" that recently the defendant, the Overlea Land Company of Baltimore County, "claiming to own the aforesaid road and disregarding the rights of" the plaintiffs and the purchasers of the lots bordering on said road, "wrongfully and against the protest of the plaintiffs, erected a wire fence along the east side of said road, completely shutting off the plaintiffs from

said road and depriving them from access thereto;" that al-
though the plaintiffs protested and caused the fence to be
removed, the defendant has threatened and is now prepared
"to re-erect said fence;" that the value of the plaintiffs' tract
will be seriously and permanently injured by the plaintiffs
being deprived of the use of said road, "there being no other
convenient means of access to the * * * portion of said tract
fronting" thereon, and that the threatened trespass of the
defendant is not "susceptible of adequate compensation in
the ordinary course of law, but will cause irreparable dam-
age and injury," etc.   The bill prayed that the defendant be
enjoined "from erecting said fence upon the road aforesaid
or in any manner interfering with the use of said road"
by the plaintiffs, and for general relief.   A preliminary in-
junction was granted as prayed.   The defendant answered
the bill under oath denying that the road in question is a
public road, and that it had been used ever since it was
laid out by the plaintiffs and their predecessors in title and
by the public generally as alleged in the bill.   The answer
admits that the defendant erected a fence on the east side of
the road, and alleges that the road was laid out by Henry
Lange "for access to his property," as a private road for
his use and the use of his heirs and assigns, and that the
defendant acquired the property of the said Henry Lange
and the strip of land used as a roadway in 1901, and is in
exclusive possession thereof; that those under whom the plain-
tiffs claim never used the road and never claimed the right
to do so, but that they and the plaintiffs always used another
road running through their own property to the Bel Air
road.   The answer concludes with a prayer that the injunc-
tion be dissolved and the bill dismissed.

The motion to dissolve the injunction was heard on the bill,
answer and proof, and on the 12th of July, 1913, the Court
passed an order continuing the injunction and retaining juris-
diction "until after the question whether the road in con-
troversy is a public road shall have been determined by a

Court of law," and requiring the plaintiffs for the purpose of having said question determined to "proceed in a court of law within thirty days," etc.   On the 28th of April, 1916, the defendant filed in the Court below a petition stating that the plaintiffs had instituted a suit against the defendant in the Circuit Court for Baltimore County and that the case had resulted in a judgment for the defendant which judgment had been affirmed by this Court, and thereupon the Court below passed the decree, dissolving the injunction and dismissing the bill, from which this appeal was taken.

It is apparent from the above reference to the bill and answer, that the vital issue of fact raised by the pleadings in this case is whether the road in question is a public road.   As the motion to dissolve the injunction was heard on the bill, answer and proof, the burden was on the plaintiffs to establish by a clear preponderance of proof that it was a public highway.   *Miller's Equity Procedure,* sec. 604; *Voshell* v. *Hynson,* 26 Md. 83; *Neurath* v. *Hecht,* 62 Md. 221.   In order to meet that burden it was incumbent upon the plaintiffs to show an uninterrupted user of the road by the public for at least twenty years.   *Day* v. *Allender,* 22 Md. 511; *Thomas* v. *Ford,* 63 Md. 346; *Kennedy* v. *Cumberland,* 65 Md. 514.

The bill alleges that the road was "laid out" by Job German "for a convenient access to his lands from the Bel Air road," while the answer avers that it was laid out by Henry Lange as a private road to his property, for his use and the use of his heirs and assigns.   The evidence shows that the narrow strip of land, fifty-five and four-tenths perches long and one perch wide, running from the Bel Air road to the land belonging to Job German, on which the road was located, was conveyed by James Cullimore and wife in 1842 to Job German.   In 1859 Job German conveyed his property, containing about ninety-four acres of land, and also the strip of land on which the road was located to James A. Clark, and in 1862 James Clark and wife conveyed the same property

and the strip of land mentioned to Henry Lange. In 1901 Henry Lange's widow, and his two daughters to whom the ninety-four acres and strip of land were devised, conveyed them to the defendant. It is therefore clear that the road was opened or laid out in the first instance, by either Job German or Henry Lange, as a private road or way from the Bel Air road to the land owned by German and subsequently conveyed to Lange. The evidence also shows that the road in question, as originally located, ran from the Bel Air road to the dwelling house on the German or Lange property. Joseph German, the brother of Job German, owned the adjoining property, and there was a road or way, through bars or gates, near the buildings on the Job German property, to a road that led to the dwelling of Joseph German, from which there was a private road to the Harford road. The road from the Bel Air road to the Job German or Lange property was called Lange's lane, and the road from Joseph German's property to the Harford road was called German's lane. Sometime after he acquired the Job German property, Henry Lange changed the road connecting Lange's lane and German's lane by making a new road over one of his fields, on which there were also bars or gates.

The record contains between two and three hundred pages of testimony, much of which relates to matters not germane to the vital issue in the case. It would serve no purpose to refer to this testimony in detail. A statement of the character of the evidence adduced by the plaintiffs and the defendant will be sufficient to indicate the conclusion to be reached.

The plaintiffs produced a number of witnesses who lived in the neighborhood and had known Lange's lane for more than twenty years, who testified that they had used the road or lane in going to Lange's house or Joseph German's house and in going from the Bel Air road to the Harford road. These witnesses stated that they knew the members of the Lange family and that they had not objected to their using the road; that Lange's lane was regarded as the entrance to

the Lange property from the Bel Air road, that German's lane was regarded as the entrance to Joseph German's property, and that there were gates or bars on the road connecting the two lanes.

The defendant offered evidence to show that Lange's lane was a private road or entrance from the Bel Air road to Lange's dwelling, and that German's lane was a private entrance or road to Joseph German's house; that there were gates or bars on the road connecting the two lanes; that Henry Lange and his family allowed their neighbors to use the road, but that strangers were not allowed to use it; that the gates on the road connecting the two lanes were sometimes locked, and that the Lange family had a key and Joseph German's family had a key. Mrs. Lange, the widow of Henry Lange, and August H. Lange, his son, testified that Henry Lange gave his neighbors permission to use the road, but that he would not allow strangers to use it. It further appears from the evidence that Lange's lane was kept in repair or maintained by Job German before he sold his property, that after Lange acquired the property the road was maintained by him and his family until it was sold to the defendant in 1901, and that in one year Henry Lange spent six hundred dollars in repairing the road.

In view of this evidence produced by the defendant, the fact that Henry Lange and his family and Joseph German and his family permitted or allowed their neighbors to use the two lanes referred to in going from the Ber Air road to the Harford road is hardly sufficient to meet the burden upon the plaintiffs to establish the character of Lange's lane as a public road. As we have said, it is or must be conceded that Lange's lane was opened as a private way or road from the Bel Air road to the residence of Job German and Henry Lange. The permissive user of the road by their neighbors did not make it a public road, for user by license or permission is not adverse, and in order to establish a public way by prescription the user must be adverse. It is said in 37

*Cyc.* 25-28: "Mere user of another's land by the public as for a highway is insufficient of itself to establish a highway by prescription. The user must be adverse and hostile to the rights of the owner, and under color or claim of right to so use the land. A user by license or permission of the owner of the land sought to be impressed with a public easement of travel is not adverse, and affords no basis for prescription, where the land owner does not consent to the user of his land by the public as of right." In *Cox* v. *Forrest,* 60 Md. 74, the Court said: "By *adverse* is meant a *user,* without license or permission, for an adverse right of an easement cannot grow out of a mere permissive enjoyment, the real point of distinction being between a permissive or tolerated user, and one which is claimed as a matter of right." See also 22 *Am. & Eng. Ency. of Law,* 1221; *Vandegrift* v. *Burke,* 98 Md. 230. The user relied on to establish the way must also be a user by the public generally, that is by all who have occasion to use the road. 37 *Cyc.* 21-22; 22 *Am. & Eng. Ency. of Law,* 1221. The testimony of the members of the Lange family and the members of the German family is to the effect that they only allowed their neighbors and acquaintances to use the lanes mentioned, and August H. Lange testified that when strangers attempted to use the road they were "ordered out," and were not allowed to go through the property. It is said in 22 *Am. & Eng. Ency. of Law,* 1222, "The fact that a road is encumbered by gates and bars is strong evidence that the use thereof is permissive merely, and not adverse." In the case of *Vandegrift* v. *Burke, supra,* JUDGE PAGE said: "It seems to have been supposed by all who used it, that Mr. Wickes, who was the apparent owner, permitted the use. There seems to be no particular reason why Mr. Wickes should not have done so, ordinarily. It led from Cross street to the interior of the square in which it was located. The use of it by persons who found it convenient to pass through it, was not injurious to him, so long as no adverse claim was set up, by which his title could be affected.

Yet he sometimes found it convenient to close it, and at such times placed gates across the alley and maintained them at his pleasure.   But when he did not thus exercise his right as the owner of the way, he permitted any one to pass along it, who chose to do so. * * * To establish the adverse character of the user, there should be shown such acts as would comport with the character of the claim or title of the appellant, so that the real owner knew or ought to have known that the party was claiming the legal right to so deal with the property." In the case at bar the road connecting Lange's lane and German's lane was not only encumbered by bars or gates, but the gate was locked whenever the Lange or German family desired to close the road, and there is not a suggestion in the Record that their right to close it was ever questioned by any one.

It follows from what has been said that the evidence in this case fails to show that Lange's lane is a public road, and as that is the only ground upon which the plaintiffs claim a right to use it and asked for an injunction restraining the defendant "from erecting a fence upon the road," the defendant was entitled to have the injunction dissolved.   The appellant insists that as the case was heard on a motion to dissolve the injunction, the injunction should have been continued until the final hearing.   But in this case the only relief sought was an injunction restraining the defendant from interfering with the plaintiffs' use of the road.   It is said in *Miller's Equity Procedure,* sec. 594: "But where the injunction asked for is not ancillary, but the primary and principal relief prayed, there is no reason for retaining the bill, if upon hearing upon the bill and answer, or upon bill, answer and depositions, it appears to the Court that there is no ground for issuing or granting the injunction upon the merits," and in the case of *Davis* v. *B. & O. R. R.,* 102 Md. 371, the Court said: "The appellant contends that the injunction should have been continued; and further insists that, whether the injunction was continued or not, the bill should not have

been dismissed at that stage of the proceedings. In this case no other relief was sought by the bill than the injunction to restrain the defendant from the acts complained of; and no other relief, under the general prayer for relief, could have been granted consistently with that specifically prayed for. It is now well settled in our practice that 'where the injunction asked for is not ancillary, but the primary and principal relief prayed for, there is no reason for retaining the bill, if upon hearing, upon bill and answer, or bill, answer and depositions, it appears to the Court, there is no ground for issuing or granting the injunction upon the merits.' "

There is some evidence in the case tending to show that the fence erected by the defendant was not on the road in question, but on the land of the plaintiffs. But as the evidence fails to show that the road is a public road, and that the plaintiffs are entitled to use it, the plaintiffs have a full and adequate remedy at law for any trespass committed by the defendant in the erection of the fence upon their land.

The Record in the suit at law was not made a part of the Record in this case, nor is the Record of the appeal from the judgment of the Court of law a complete record of the case in the lower Court. As the evidence in this case fails to show that the plaintiffs are entitled to a perpetual injunction, we have disposed of this appeal without reference to the effect of the proceedings and judgment in the case at law, or the question of the jurisdiction of the Court below to decree a perpetual injunction until the plaintiffs had established in a Court of law their right to use the road as a public highway.

*Decree affirmed, with costs.*