# CLARK

*v.*

# THE WALTER T. BRADLEY COAL, LIME AND CEMENT COMPANY.

CORPORATIONS; INNOCENT PURCHASERS; DEBTOR AND CREDITOR;
FRAUD; FRAUDULENT TRANSFERS; PARTIES; RECEIVERS;
APPEALABLE ORDERS; CREDITOR'S SUITS.

1. A corporation fraudulently organized by three persons for their own use and benefit and to which they fraudulently transfer their property for the purpose of defrauding their creditors, cannot be regarded as an innocent purchaser of that property for value; and in a suit by a creditor against such persons and the corporation to set aside such a transfer, a plea by the corporation that it was an innocent purchaser for value without notice will have the same effect in admitting the averments of the bill as a demurrer by the defendant debtors.

2. It is improper to make the trustees and beneficiaries in an existing deed of trust which is not attacked, parties to a bill of complaint to set aside a deed as fraudulent and to call for discovery of the amount of interest due when the principal sum will not be due for several years.

3. Greater discretion is allowed a court of equity in the appointment of a receiver *pendente lite* than in the appointment of a receiver upon final hearing; in the former case probable cause would be a sufficient ground for the appointment, while satisfactory proof would be required in the latter case.

4. The right of appeal given by the act of February 9, 1893, to this court from interlocutory orders appointing receivers, etc., does not modify in any manner the discretionary power of the equity court to pass such orders upon probable cause and *prima facie* proof of right in a complainant.

5. The exhaustion of the personal property of a debtor as such is not required before a creditor may have recourse to equity to reach equitable interests in real estate, except in the matter of the administration of decedents' estates.

6. Where a creditor has prosecuted his claim to judgment at law, has caused execution to issue thereon and the execution has been returned wholly unsatisfied, the remedy at common law has been exhausted and foundation sufficiently laid for application to a court of equity.

7. A bill in equity to subject personal assets fraudulently transferred to the payment of a judgment debt, is maintainable, even though the writ of execution on the judgment was returned before the return day of the writ; *following* Mehler *v.* Cornwell, 3 App. D. C. 92.

8. Where a judgment creditor's bill alleges and it is by a demurrer and a plea admitted that the judgment debtors are insolvent; that they have made fraudulent conveyances of their property; that they have no property subject to execution at law, and that under cloak of a corporation they have organized and to which they have conveyed their personal property they are wasting and making way with their assets, a sufficient case of fraud and imminent danger is shown to justify the appointment of receivers *pendente lite.*

9. In such a case the property of the corporation is to be regarded as the property of the judgment debtors, and an order of the lower court is a proper one which appoints receivers of *all* of the goods, chattels, etc., both of the debtors and the corporation.

No. 454. Submitted May 7, 1895. Decided June 3, 1895.

HEARING on an appeal by the defendants from a decree appointing receivers *pendente lite* in a judgment creditor's suit. *Affirmed.*

The Court in its opinion stated the case as follows:

This is an appeal from an interlocutory order or decree of the Supreme Court of the District of Columbia, sitting in equity, whereby receivers were appointed in pursuance of a bill in equity in the nature of a creditors' bill in aid of proceedings at law.

From the bill it appears that the appellee, the Walter T. Bradley Coal, Lime and Cement Company, a corporation under the laws of the State of Pennsylvania, on November 3, 1894, procured a judgment on the common law side of the Supreme Court of the District of Columbia against the appellants, T. Edward Clark, Jr., Allen B. Clark and George B. Clark, for the sum of $1,159, with interest; that a writ of execution thereon had been issued on the same day, and two days thereafter, on November 5, 1894, returned *"nulla bona;"* and that the judgment remained wholly unpaid and unsatisfied.    It also appeared, according to the allegations of the bill, that the judgment debtors were not the owners of any property in the District of Columbia subject to execution at common law; but that there was certain real estate which they had fraudulently conveyed away, and certain personal property which they had fraudulently assigned, all of which it was the purpose of this suit to reach and subject to the satisfaction of the above mentioned judgment.

T. Edward Clark and George B. Clark, being the owners of lot 186, in square No. 856, in the city of Washington, mortgaged the same, on May 4, 1893, to secure the payment of $1,750, with interest, in five years thereafter, to the American Security and Trust Company; and subsequently, on December 13, 1893, being the owners also of lot 187 in the same square, they mortgaged both lots to secure the payment of $1,600, with interest, in one year thereafter, to Thomas W. Smith.    Then, on September 18, 1894, the same two parties conveyed the two lots absolutely to the Clark Brothers Lime and Cement Company, a corporation, which, it is alleged, the three Clarks had organized under the laws of the State of Virginia for the purpose of defrauding the appellee by placing their property as far as possible beyond its reach and the reach of legal process.    On the same day, September 18, 1894, T. Edward Clark and George B. Clark, who were dealers in lime, cement, plaster and such like things, as well as owners of

horses, wagons, and other articles used in the conduct of the business, executed also and placed upon record a bill of sale to the corporation so organized by them of all their business and property, including their book accounts, bills payable, the good will of the business, and so forth.

On the next day (September 19, 1894), Allen B. Clark, who was the owner of a large and prosperous business as a dealer in sand, and the owner as such of book accounts of great value, horses, wagons, and the like, executed and placed upon record a bill of sale of all said business, property, book accounts, and the like, and the good will of his business to the same Virginia corporation.

At the time of the execution of these bills of sale, and long prior thereto, it is alleged that the Clarks were indebted to the appellee on the account for which it subsequently recovered the judgment before mentioned; and that the bills were executed for the purpose of defrauding the appellee, as had been likewise the conveyances of real estate to the Virginia company.

This company, it is stated, had been formed by the Clarks for the express purpose of transferring their property to it, and thereby delaying and defrauding the appellee, the complainant below. They held and owned all the stock; or, if there were any stock standing in the name of other persons they were merely nominal holders, introduced merely for the purpose of complying with the requirement of the laws of Virginia in regard to the number of persons necessary to form a corporation. The Clarks themselves continued to carry on their respective business at the same places and in the same manner as before, without any supervision from the Virginia corporation; and it was charged that they were each and all of them insolvent; were collecting their assets and wasting them, and were making away with their property in fraud of the complainant's rights.

The complainant had commenced a suit at common law on August 30, 1894, but had been compelled to discontinue it on September 27 thereafter, on account of some

defective pleading ; whereupon it immediately commenced the suit in which it recovered judgment, as before stated. Soon after this recovery of judgment the appellee, as complainant, filed his original bill in this cause.    Upon demurrer, interposed it filed, on February 20, 1895, an amended bill, which is the bill in the record before us and from which the facts hereinbefore stated have been extracted. The prayer of this bill was for discovery, the vacation of the alleged fraudulent conveyance and bills of sale, and the appointment of a receiver to take possession of all the property and effects included in the bills and to hold them subject to the further order of the court.

To this amended bill there was a plea interposed by the Clark Brothers Lime and Cement Company, sworn to by George B. Clark as its treasurer, to the effect that it was a *bona fide* purchaser for value without notice of the complainant's claim.    The Clarks demurred.    There was a hearing of the application for the appointment of a receiver pending the suit ; and receivers were thereupon appointed by the court to "take possession of all the goods, chattels, effects, books of account, bills receivable, promissory notes and other evidences of indebtedness belonging to or claimed by the said defendants Clark and the Clark Brothers Lime and Cement Company," "with authority to collect and receive payment of any such bills receivable, promissory notes and accounts current."    And from this order the defendants, the three Clarks and the Clark Brothers Lime and Cement Company, have prosecuted the present appeal.

*Mr. Clarence A. Brandenburg* for the appellants.

*Mr. Wharton E. Lester* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court :

For the purpose of the present hearing in this court, as in the court below, the allegations of the bill of complaint must be taken as true.    The plea and demurrer do

not serve the appellants in this regard. For the present purpose, the demurrer is an absolute admission of every statement of fact in the bill; and the plea such as it is, has no different effect. This plea, while no doubt supposed to be technically true and based upon the theory that an individual, as an officer of a corporation, has no knowledge of that of which, as a natural person, he is perfectly well aware, is palpably untrue. A corporation can have no notice or knowledge of anything except by or through the persons who constitute its officers, and a corporation, fraudulently organized by three persons for their own use and benefit and to which they fraudulently transfer their property for the purpose of defrauding their creditors and wherein they own or control all the stock, cannot, with any due regard to the principles of equity, be regarded as an innocent purchaser of that property for value. To the plea in this case, therefore, we cannot give any consideration whatever as affecting the statements of the bill.

The bill of complaint, however, is liable to some just criticism, as well for what it fails to say, as for that which it does say. The statement might have been made more definite; and some things are stated in the bill which should have been omitted. There is no justification, so far as is here shown, for making the American Security and Trust Company and the trustees in the deed to secure it parties to this suit. That deed is not attacked as in any manner fraudulent. There is neither necessity nor propriety for discovery from any person connected with it. It is clear on the face of the deed that the principal sum secured by it will not be due for several years; and any one, acquainted with the elementary rules of arithmetic, could calculate the amount of interest due upon it. It is not proper that, for the purpose of such useless and futile discovery as is here asked, persons should be brought into court and required to make answer who have no interest whatever in the subject matter of controversy and against whom no relief is or can be prayed. Courts of equity should be diligent to award costs in such cases.

But after all due allowance for the shortcomings of the bill, it is quite apparent from it that the principal defendants, T. Edward Clark, George B. Clark and Allen B. Clark, are judgment debtors of the complainant, are insolvent, have endeavored and are yet endeavoring to place their assets beyond the reach of legal process so as to hinder and defraud the complainant and their other creditors; that they have conveyed those assets to a corporation fraudulently organized by them for the purpose of defrauding the complainant; and that, under guise of that corporation, they are themselves collecting those assets, converting them to their own use, and wasting them, all in fraud of the complainant's rights, and to evade their just obligations to the complainant. Under the circumstances of this case, these facts, for in the present condition of the pleadings we must assume them to be facts, are enough to justify the appointment of a receiver pending the suit for such property as a receiver might properly be appointed for by a court of equity.

The appointment of a receiver pending a suit is a purely conservative measure, very different in its effect from such an appointment upon final hearing. In the latter case it is a proceeding practically for the purpose of execution after ultimate adjudication of right in the party for whose benefit the appointment is made; but the purpose of the appointment of a receiver pending a suit is merely to preserve a fund, which is in danger of being lost or wasted, for the benefit of the persons to whom it may be ultimately adjudged to belong. Greater discretion, therefore, is allowed to the court in the one case than in the other. We may say that probable cause would be sufficient ground for the appointment of a receiver during a suit, while satisfactory proof of right would be required to justify such an appointment upon final hearing. It is a consequence of this greater discretion that is reposed in the justice holding the court of equity with reference to the interlocutory proceeding as distinguished from the final adjudication, that, under the ordinary rules of procedure, no appeal is allowed from orders ap-

pointing receivers during the pendency of suits. And, while under the act of Congress which created this court, appeal is now allowed from such interlocutory orders, we do not understand that this right of appeal modifies in any manner the discretionary power of the justice holding the equity court to pass such orders upon probable cause and *prima facie* proof of right in a complainant. Nor do we understand that our jurisdiction on appeal is less discretionary, or that we should not indulge all possible presumption in favor of the propriety of the action of the court below in the order which it makes. Indeed, we think that it should be made very clear and manifest to us that there is impropriety in that order before we attempt to interfere with the discretion that must continue to be vested in the court of equity.

But we do not understand it to be controverted by the appellants that a proper case for the appointment of a receiver was made out here by the complainant below, otherwise than in two respects: 1st. That the equity court was without jurisdiction, under the circumstances, to appoint a receiver for the personal property referred to in the bill of complaint; and, 2d. That it was error to appoint receivers both for the real and personal property before final hearing without evidence to overcome the plea. Error is assigned also, because the appointment of the receivers was for " *all* the goods, chattels, effects, credits and accounts of the defendants Clark and the Clark Brothers Lime and Cement Company," without restricting it to the property transferred by the Clarks to the company.

1. With regard to the first question, the basis of the contention of the appellants is, that the complainant had not exhausted its remedy at law before making application to a court of equity, and that this fact appeared on the face of the bill. The burden of the argument seems to be that a creditor must proceed at law until he obtains a lien upon the debtor's property before he can have recourse to a court of equity to aid him; that, with respect to real

estate, he obtains this lien by procuring judgment; that, with reference to personal property, the issue of an execution upon the judgment is necessary to give such lien; that this lien upon personal property is lost by the return of the execution unsatisfied; that the court of equity acts only to remove obstructions to executions at common law, and that this aid cannot be given if the execution has been returned. It is inferred, therefore, that the bill in the present case cannot be sustained as to the personal property; and that, if it cannot be sustained as to the personal property, it cannot be sustained as to the real estate, inasmuch as the personal property, as it is claimed, is the primary fund for the payment of debts.

The last proposition, at all events, is clearly untenable. There is no such rule of law in force in this jurisdiction, and there never has been, as that which would make personal property liable to the satisfaction of debts before recourse can be had to real estate, except in the matter of the administration of the estates of deceased persons. Consequently, the exhaustion of the personal property of a debtor as such is not required before a creditor may have recourse to a court of equity to reach equitable interests in real estate.   The remedy at law must be exhausted; but there is no difference in this regard in our jurisdiction between real and personal property.   In the present instance, the interest in real estate sought to be reached by the bill is a purely equitable interest.   While the conveyance of their real estate by the Clarks to their Virginia corporation might be treated by the complainant as absolutely void as to it, upon the assumption that such conveyance was a fraudulent device to hinder and delay the complainant, yet the interest conveyed, or sought to be conveyed, was only an equitable interest, which, for the satisfaction of debts, could only be reached in equity.   But this is unimportant in the present connection; for the receivers appointed are not for the real estate, but for the personal property; and the only question before us is the propriety of that appointment.

On behalf of the appellant it is argued that that question has been settled in favor of their contention by the decision of this court in the case of *Hess* v. *Horton*, 2 App. D. C. 86. We do not so understand it. In that case, a complainant resident in Maryland, who had procured no judgment and who had instituted no proceedings at common law, filed his bill in equity in the Supreme Court of the District of Columbia against a defendant resident in New York, to enforce payment of a claim, consisting merely of an account for goods sold and delivered, against a piece of real estate in the District of Columbia owned by the defendant and conveyed by him, soon after the debt was contracted, through the intervention of a third person, to his wife, as it was alleged, without consideration and for the purpose to hinder, delay and defraud creditors, the only other material allegation in the bill being that the defendant was not the owner of any property, real or personal, in the District of Columbia, that could be reached by any known legal process.

It is difficult to see how that case can be a precedent for the one now before us. In that case, the complainant had not only not exhausted his remedy at law, but had done nothing whatever towards the enforcement of any legal remedy. And when the bill of complaint was dismissed by the court below upon demurrer, we affirmed that decision ; and we cannot see how we could have done otherwise, in view of the overwhelming mass of authority in which the doctrine is distinctly laid down, as it is laid down by the Supreme Court of the United States in one of its latest utterances upon this subject, that "when it is sought by equitable process to reach the equitable interests of the debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an execution thereon, and its return unsatisfied, or must make allegation showing that it is impossible to obtain such judgment in any court within such jurisdiction." *National Tube Works Company* v. *Ballou*, 146 U. S. 517.

It is true that we said in the case of *Hess* v. *Horton :* " No reason appears why, if the allegations of the bill be true, complainant could not have commenced his action at law, and sued out a writ of attachment against the non-resident defendant.   Counsel undertakes to explain the failure to pursue this course on the ground that defendant Horton had only an equitable interest remaining in the lands conveyed, and this is beyond the reach of legal process under the law prevailing in this District.   This reasoning is not satisfactory.   The conveyance by Horton to his wife passed a complete title to her as against him, whether made in good faith or in bad.   If made for the purpose of defrauding creditors, neither Mrs. Horton nor Duvall (the intermediary) can be held as trustees for their benefit, because as to them the conveyance is void.   *   *   *   We will not say there is no possible case in which this exception as claimed may not be made to apply ; but wherever it has been held by the Supreme Court that judgment at law and fruitless execution thereon are not indispensable prerequisites to the right to resort to equitable relief, it will be found that the complainant had some interest in, or equitable lien upon,the fund or property sought to be subjected to his demand, as was the case in *Case* v. *Beauregard,* 101 U. S. 688, another of the authorities relied on by the appellants."

But that has no application to the present case.   The meaning of that statement is, that, unless a person has some lien or specific claim upon property, he must procure a judgment at common law and have execution issued thereon, or show that execution would be useless, before he can have recourse to a court of equity to aid him in the enforcement of an indebtedness ; and we said that the existence of void deeds of conveyance of real estate presented no reason for dispensation from that rule, especially under the peculiar circumstances of that case where both the creditor and the debtor were non-residents.   Here the creditor has prosecuted its claim to judgment at common

law, has caused execution to be issued thereon, and that execution has been returned wholly unsatisfied. In accordance with all the authorities, the remedy at common law has been exhausted, and the foundation has been sufficiently laid for application to a court of equity.

It is objected, however, that the writ of execution has been returned too soon; and that, therefore, the remedy at common law has not been exhausted. This objection was made and disposed of by us in the case of *Mehler* v. *Cornwell*, 3 App. D. C. 92; and it is unnecessary for us to repeat what we there said. In fact, the decision in that case practically disposes of the question now before us. In that case, like the present, there was a judgment, a writ of execution thereon issued and returned unsatisfied before the return day of the writ, and thereupon a bill in equity filed to reach personal assets fraudulently transferred by the judgment debtors; and we held, affirming the decision of the court below, that the proceeding was proper. This is not in antagonism to the case of *Hess* v. *Horton*, or any of the decisions of the Supreme Court of the United States that are cited on behalf of the appellants; and we must regard it as controlling the present case.

2. It is next objected that it was error in the court below to appoint receivers in the face of the plea of the defendant, the Virginia company organized by the Clarks, without some testimony to overcome that plea. Whatever might be the merits of this objection if made by a person entitled *prima facie* to be regarded as a purchaser for value without notice of any rights of the complainant, it can have no force in the present case; for the plea disproves itself, and the alleged innocent purchaser is a fictitious contrivance of the principal defendants to evade their just obligations. The Clarks are the company; and it is idle to argue that the company, under the circumstances stated in the bill and not denied by the plea, could become an innocent purchaser for value.

3. It is objected, in the third place, that a strong case must be made out before a receiver will be appointed; and

that no sufficient case is made here.   As stated in the case of *Blondheim* v. *Moore*, 11 Md. 365, 374, the result of all the cases is that fraud and imminent danger must be proved. Fraud and imminent danger are shown here.   It is alleged, and by the plea and demurrer admitted, that the Clarks are insolvent ; that they have sought by fraudulent conveyances to put their property beyond the reach of their creditors ; that they have no property subject to execution at law, and that, under cloak of the company which they have organized to cover their fraud, they are wasting and making away with their assets.   This is undoubtedly a case of fraud and imminent danger that justifies the appointment of a receiver.   It may all be disproved hereafter by testimony ; but as the case now stands on the pleadings, we have no hesitation in holding that it presents an emergency in which the extraordinary remedy of the appointment of a receiver is right and proper.

4. We have next to consider the objection that the order for the appointment of receivers in this case directs the receivers to take possession of "*all* the goods, chattels, effects, credits and accounts " both of the Clarks and of their Virginia company, instead of their power being restricted, as it is claimed it ought to have been, to the property that was transferred by the Clarks to that company.   As we said in regard to the merits of the plea interposed in behalf of that company, this objection might have force if made by or on behalf of some person other than an organization which equity must regard as identical with the Clarks themselves. Under the circumstances of this case as now presented to us, we must regard the property of the company as the property of the Clarks, and therefore as proper to be taken into the possession of the receivers.

We are of opinion that there was no error in the order of the court below appointing receivers ; and that order must, therefore, *be affirmed with costs ; and the cause will be remanded, so that the same may be proceeded with in accordance with law.   And it is so ordered.*