## HERTZ BLONDHEIM, SIMON GOODMAN, *et al., vs.* ROBERT MOORE and CHARLES MOORE.

An appeal will not lie from an order granting an injunction and appointing a receiver, until *after answer filed;* the act of 1853, ch. 374, does not change that of 1835, ch. 380, in *this respect,* but only provides the *effect* and *consequences* of an appeal *when taken.*

Under the act of 1853, ch. 374, when an appeal is taken from an order granting an injunction, and an *appeal bond* given, as therein provided, the *operation* and *effect* of the injunction *wholly* and *entirely ceases.*

If, on such an appeal, the order is *affirmed,* and the thing on which the injunction was intended to operate, exists *in specie* in the possession of the defendant, the injunction is restored to its original vigor, and if the thing has been consumed or disposed of, the complainant's remedy is on the *appeal bond.*

To justify the appointment of a *receiver,* it must appear that the claimant has *title* to the property, and the court must be satisfied, by affidavit, that a receiver is necessary to *preserve it;* the court will never appoint a receiver merely because the measure can do no harm.

Fraud or imminent danger, if a receiver should not be appointed, must be *clearly proved,* and unless the necessity be of the most *stringent character,* the court will not appoint until the *defendant* is first *heard* in response to the application.

The allegations of a bill, for an injunction and receiver, that the complainants are *informed* of certain matters, without stating when or whence the information was obtained, do not make such a case of fraud and imminent danger as to justify the granting of the injunction, or the appointment of a receiver, without notice to the defendants.

APPEAL from the Circuit Court for Baltimore city.

The original bill in this case, filed on the 19th of June 1857, by the appellees, alleges that Hertz Blondheim, from the 17th of November 1856, had been purchasing goods, on a credit of six months, from the complainants, to the amount of $1183.88, of which he has paid no part, though the sum of $319.77 thereof is now due; that Blondheim owes large amounts over and above his indebtedness to the complainants, and now represents his liabilities at between $12,000 and $14,000; that having contracted these debts, and being hopelessly insolvent, he, on the 7th of May 1857, executed to Simon Goodman a deed of certain furniture, together with the whole stock of

goods on hand in the store and dwelling No. 57, Eutaw street, for the consideration, as is pretended by the deed, of $3000; that afterwards, on the 16th of June 1857, being then hopelessly insolvent, he executed a deed of all his stock in trade, and all debts and claims due him, and all book-accounts, bonds, bills, evidences and vouchers concerning the same, to Abraham Rosenberg, in trust, to pay the first claims of all such creditors as should, within ninety days, assent to the deed and execute releases, which deed contained a provision that the trustee should not be answerable for any deterioration or loss to the property, "unless the same be consequent upon his own wilful commission or neglect."

The bill then states, that complainants are informed and believe that said Goodman came from Germany here about twelve months ago; that since he came to this country he has been an employee; that he is the brother of the wife of Blondheim; that when he came to this country, he was without any considerable means with which to purchase the amount of goods which, by the deed to him, he is said to have purchased for cash. That complainants are informed and believe, and therefore charge, that said Goodman is an unmarried man; that the property mentioned in the deed to him is now, and has been since the making thereof, in the possession of Blondheim, who is selling and disposing of the same in the course of his business, and has been replacing the goods so sold with others purchased, on credit, of complainants and other creditors, and that Goodman has not pretended to use any control over the merchandize or furniture.

The bill further states, that complainants are further informed and believe, and therefore charge, that Blondheim is now engaged, under cover of these two deeds, in endeavoring to obtain from his creditors a release on paying fifty *per cent.* of their claims; that they are informed and believe, and therefore charge, that Goodman paid no money, or other valuable consideration, for the deed to him, or, if so, no considerable portion of the amount mentioned therein, and that said deed was not made *bona fide,* but to deceive the creditors of Blondheim, and, in connection with that to Rosenberg, to obtain from his

creditors a release of their claims for less than he is able and should pay them; that they are informed and believe, and therefore charge, that if Goodman or Blondheim, or either of them, had notice that complainants were about to apply to this court, to obtain possession of the property mentioned in said deed to Goodman, they would remove the same out of the jurisdiction of the court, and secrete it, for the purpose of hindering, delaying and defrauding the creditors of Blondheim; that complainants therefore charge, that this deed was contrived and devised of malice, fraud, covin and collusion, and to the end, purpose and intent to hinder, delay and defraud the creditors of Blondheim in the collection of their debts, and in secret trust for his benefit, and they are advised the same is void, and bears on its face the evidence of fraud.

The bill then propounds special interrogatories to Blondheim and Goodman, and prays that the deed to the latter may be declared void, that a receiver may be appointed to take possession of the property mentioned in it, in order that the same may be sold and applied to pay the debts of Blondheim, and that both Blondheim and Goodman may be restrained, by an injunction, from selling or disposing of, or retaining from the receiver, any of the property mentioned in said deed, and for general relief.

On this bill (which was sworn to) the court (KREBS, J.) granted the injunction, and, without notice to the defendants, or a rule to show cause, appointed a receiver, upon the execution and approval of the necessary bonds.

On the 26th of June 1857, Blondheim and Goodman, the only parties who were made defendants thereto, filed their answers to this bill, and entered a motion to dissolve the injunction and discharge the receiver, which motion was set down for hearing. Afterwards, on the 7th of July following, the complainants filed an amended bill, (the allegations of which need not not be stated in this case,) making Rosenberg a party, and calling upon him to answer both bills, and upon Blondheim and Goodman to answer the amendment, and praying that Rosenberg may be restrained, by injunction, from disposing of, or retaining from the receiver, any of the property men-

tioned in the deed to Goodman, and that the receiver may be authorized to take possession of all said property.

The court granted the injunction as prayed by this amended bill, and *before answer* to the same, *all* of the defendants appealed "from the orders appointing receiver and granting injunctions in this case," and after the *appeal bond* had been filed and approved, the court, upon application of the appellants, passed an order directing the receiver to deliver to Rosenberg, trustee of Blondheim, all the property and effects which he had received as receiver, under his appointment in this case, and to report and account to the court therefor.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*W. C. N. Carr* and *William Pinkney Whyte* for the appellants:

1st. There was nothing in the *original bill* to justify the court in passing the order appointing a receiver, and granting an injunction against Goodman and Blondheim. The bill of sale to Goodman, if made in good faith, conveyed the legal title to him, even though Blondheim was in embarrassed circumstances at the time. 3 *Md. Rep.*, 212, *Glenn vs. Grover, et al.* The simple allegation of indebtedness, and that the bill of sale was not *bona fide*, will not justify the interference of a court of equity, by the appointment of a *receiver*. The court will not exercise this high power, without notice to the defendants, or a rule to show cause, nor *before answer* filed, unless in a case of pressing necessity, and on *clear proof* that the property is in *imminent peril*, and that it is absolutely necessary that a receiver should be appointed to meet the exigency of a special case. 1 *Md. Ch. Dec.*, 489, *Thompson vs. Diffenderfer. Ibid.*, 70, *Clark vs. Ridgely.* 3 *Md. Rep.*, 99, *Furlong, et al., vs. Edwards.* 4 *Md. Ch. Dec.*, 39, *Walker vs. House.* 10 *Md. Rep.*, 503, *Uhl vs. Dillon. Edwards on Receivers*, 19. 1 *Bland*, 213, *H. K. Chase's Case. Ibid.*, 422, *Williamson vs. Wilson.* 13 *Ves.*, 266, *Middleton vs. Dodswell.* 16 *Ves.*, 59, *Lloyd vs.*

Blondheim, *et al.*, *vs.* Moore.

*Passingham,* and same case in 3 *Merivale,* 697. 2 *Brown's Ch. Rep.,* 157, *Vann vs. Barnett.* 2 *Paige,* 450, *Verplanck vs. Mercantile Ins. Co.* 7 *Paige,* 56, *Austin vs. Figuera.* 8 *Paige,* 373, *Sandford vs. Sinclair.* Not only is there *no proof* in this case, of imminent danger to the property, but if we are confined to the *allegations* of the bill, we find there no averment, whatever, of any *fact,* which can show to the court any such danger or fraud in the case; with the exception of the fact of indebtedness, every other allegation in the bill is based upon *information* and *belief.* Such allegations do not come up to the *clear proof* required by the authorities, to justify the appointment of a receiver.

2nd. It has been suggested by the appellees, that the appeal from the order granting an injunction against Rosenberg, upon the amended bill, should be dismissed, because *no answer* was filed to this bill before the appeal was taken. But it is submitted, that under the act of 1853, ch. 374, there is no necessity for the filing of an answer before an appeal is taken, and that this act supersedes those of 1835, chaps. 346 and 380, in relation to appeals from orders appointing receivers and granting injunctions, and now gives the right of appeal from any order of the court in such cases. It is further submitted, that upon giving bond as provided for by this act, the appeal *stays* the *operation* of the *order* in the same manner as an appeal from a *final decree.* If this appeal, then, properly brings up for review the order passed upon the amended bill, it is insisted, that the case made by that bill does not warrant the passage of such order.

*P. McLaughlin* and *J. M. Campbell* for the appellees:

1st. As regards the order granting the injunction upon the *amended bill,* the appeal must be dismissed, no answers having been filed at the time the appeal was taken. The filing of an answer is expressly made a *condition precedent* to an appeal from such an order, by the acts of 1835, chaps. 346 and 380, and the provisions of these acts are in nowise changed, in this particular, by that of 1853, ch. 374.

2nd. In considering the appeal from the order passed upon

47 v. 11.

the *original bill*, this court is confined to the case made by the *bill*; the answers cannot be looked to. 10 *Md. Rep.*, 418, *McCann vs. Taylor.* Looking then to the allegations of the bill, it is insisted, that the case thereby made is one of actual fraud and imminent danger, justifying the action of the court in appointing a receiver. 2 *Jacob's*, 280. 6 *Madd.*, 38, *Stellwell vs. Williams.* 2 *Brown's Ch. Rep.*, 132, *Vann vs. Barnett.* 31 *Eng. Law & Eq. Rep.*, 436. *Edwards on Receivers*, 98. 2 *Story's Eq.*, secs. 826, 827, 834. 1 *Paige*, 299, *Haggerty vs. Pittman.* 4 *Paige*, 575, *Bloodgood vs. Clark.* 3 *Johns. Ch. Rep.*, 48, *Boyd, et al., vs. Murray.* 9 *Gill*, 472, *Speights vs. Peters.* 1 *Bland*, 213, *H. K. Chase's Case.* 1 *Md. Ch. Dec.*, 87, *Brown vs. Stewart.* 2 *Md. Ch. Dec.*, 157, *Drury vs. Roberts.* 10 *Md. Rep.*, 466, *Rose & Gauss vs. Bevan.*

LE GRAND, C. J., delivered the opinion of this court.

The original and amended bills show these facts: that Blondheim, being heavily indebted and insolvent, on the 7th day of May 1857, executed a bill of sale of certain property therein specified, for the consideration of $3000, to Simon Goodman, and that on the 16th of June 1857, he executed a deed of trust to Rosenberg, of all his stock in trade, for the benefit of such of his creditors as should release him in ninety days, providing by the same, that the trustees should not be liable for any loss or deterioration, but what might be occasioned by his own wilful commission or neglect. ·

There were two bills filed, an original and an amended bill; the objects of both being the same, namely, to have declared fraudulent and void the conveyances made by Blondheim as made with the design to hinder, delay and defraud creditors, and also to procure an injunction and the appointment of a receiver. Injunction was granted and receiver appointed upon the original bill, and an injunction granted upon the amended bill.

Rosenberg failed to answer either bill, and Blondheim and Goodman failed to answer the amended bill. An appeal has been taken from the order passed on each bill. It is con-

tended, on the part of the appellees, that an appeal will not lie until after answer filed. This is undoubtedly the case under the decisions construing the act of 1835, ch. 380, and we think the law is not changed in this respect by the act of 1853, ch. 374. This latter act only provides *the effect and consequence* of an appeal, when taken from the orders specified in it, and a bond shall be given. It does not contemplate a change in the circumstances necessary preliminarily to an appeal under the act of 1835. If this be so, then the appeal of Blondheim, Goodman and Rosenberg, from the action of the court on the amended bill must be dismissed. This confines us to the case made by the original bill. But before we proceed to examine its averments, we shall state what we consider to be the operation of an appeal, under the act of 1853, ch. 374. We do this, because it is but proper the profession should understand the views of the appellate court, in regard to a statute which is daily acted upon, affecting, as it does, most materially, the business of a commercial and manufacturing community. That act is as follows:—"That in all cases where an appeal is taken from an order of a court having equity jurisdiction, either granting an injunction or appointing a receiver, or from an order refusing to dissolve an injunction, the operation of such an order shall not be stayed in any case, unless the party praying the appeal give bond, with security, to indemnify the other party *from all loss and injury which such party may sustain by reason of such appeal, and the staying of the operation of such order;* such bond to be approved by the judge granting the injunction, or the clerk of the court where the proceedings are pending; and upon the giving of such bond, *the appeal shall stay the operation of all such orders, in the same manner as appeals do from final decrees.*"

It is not to be presumed that the legislature meant nothing by this act. To our minds, if the English language means anything, this act distinctly provides, that an appeal in the cases authorized by it, (where a bond is given,) "shall stay the operation of all such orders *in the same manner as appeals do from final decrees.*" What is this manner? It is nothing

more than this, everything is stayed, suspended, until judg-
ment shall be pronounced by the appellate tribunal; that is to
say, the *"operation"* and *"effect"* of the injunction wholly
and entirely ceases. Such was the effect and operation of an
appeal, under the act of 1835, ch. 380, except in the case of
an injunction to stay waste. The act of 1853 does away
with the exception. If on appeal from an order granting an
injunction, this court should affirm the order, and the thing on
which the injunction was intended to operate should exist *in
specie*, in the possession of the defendant, then the injunction
is restored to its original vigor; or if the thing has been con-
sumed or disposed of, then the complainant must proceed on
the bond, which is given for the express purpose of indemni-
fying him *"from all loss and injury"* which he may sustain
because of the appeal. We are unable to give any other
meaning to the act. The objection that before the bond can
be made available, practically, to the indemnification of the
aggrieved party, the obligors may become insolvent, however
true, can nevertheless have no weight in the construction of
the act. It is an objection which would apply with equal
force to any other bond. The act provides, that the bond
shall be approved by the judge granting the order, and we are
bound to assume this power will be exercised with every cau-
tion, and not until the court is fully certified of its sufficiency.
If this does not guarantee indemnification to the party, then
the failure is owing to the inadequacy of our legislation and
the mutability of human affairs. The foresight of man is not
competent to guard against all future contingencies. We may
add, that when all things are calmly considered, perhaps it
will be found that under our acts of Assembly, and the deci-
sions thereon, the creditor has a very decided advantage over
his debtor. He is permitted to state his own case in his own
way, restrained only by his conscience, and upon such state-
ment, if full enough, to break up the business of his debtor.
If the latter appeal from the order, although his conscience
has been probed, yet, he has no benefit from his own testi-
mony; his case is tried and determined solely on that of his
adversary. This, to say the least of it, does not look much

like equality. To deny an appeal to the defendant, until he shall have answered the bill, and then to say, the answer shall not at all be looked to, is not without the appearance of trifling; it is to command an act, which, when performed, is to be taken as wholly void of value. The only reason we can imagine for such a procedure is, that it enables the complainant to "fish out" a case from the answer of the defendant, so as to furnish him with the aids necessary to alter his case if need be. It is a species of jugglery not altogether worthy of commendation. It is, however, the law, and we are bound by it.

The injunction was granted and the receiver appointed, on the application of the complainants, without notice to defendants, or a rule for them to show cause.

The material averments of the original bill, (the only one properly before us,) may be thus stated. It is alleged, that Blondheim, had purchased of the complainants, goods to the value of $1183.83, no part of which amount he has paid, although, at the time of the filing of the bill, there was due of it $319.97; that he owes to other creditors large sums, amounting in the aggregate to twelve or fourteen thousand dollars; that Blondheim being so indebted, and hopelessly insolvent, he, on the 7th of May 1857, executed and delivered to Goodman a deed of certain furniture, together with the whole stock of ready made clothing, in store and dwelling No. 57, Eutaw street, for the consideration, "as is pretended by the deed aforesaid, of three thousand dollars." It further alleges and charges as follows, that the complainants "are informed and believe, that the said Simon Goodman came from Germany here, about twelve months ago, that since he came to this country he has been an employee; that he is the brother of the wife of said Hertz Blondheim; that when he came to this country he was without any considerable means with which to purchase the amount of goods, which, by the deed, he is said to have purchased for cash." The bill continues, that the complainants are *informed* and believe that Goodman is an unmarried man; that the property is now, and has been since the making of the deed, in the possession of Blondheim,

and that he is selling and disposing of the same in the course of his business, and has been replacing the goods so sold therefrom, with others purchased on credit.

It is only necessary to refer to a few authorities, to exhibit the law applicable to a case like this. The Chancellor in the case of *Clark, et al., vs. Ridgely, et al.,* 1 *Md. Ch. Dec.,* 70; in the case of *Thompson vs. Diffenderfer, Ibid.,* 489; and in the case of *Walker's Adm'r, vs. House,* 4 *Md. Ch. Dec.,* 39, has brought together the leading decisions, wherein the doctrine applicable to the appointment of a receiver is clearly laid down. Without quoting, at large, from the cases referred to and approved by him, it is sufficient to say, they will be found to establish the following propositions:—1st. That the power of appointment is a delicate one, and to be exercised with great circumspection. 2nd. That it must appear the claimant has a title to the property, and the court must be satisfied by affidavit, that a receiver is necessary to preserve the property. 3rd. That there is no case in which the court appoints a receiver merely because the measure can do no harm. 4th. That "fraud or imminent danger, if the intermediate possession should not be taken by the court, must be clearly proved;" and 5thly. That unless the necessity be of the most stringent character, the court will not appoint until the defendant is first heard in response to the application.

This is really the meaning of the cases. Different judges employ different language to express their ideas, but they all mean the same thing; there must be fraud and imminent danger proved, in a case like the present.

Keeping these limitations in view, let us enquire what are the evidences of fraud and imminent danger alleged in the bill? With the exception of the indebtedness to complainants, they profess a total ignorance of all the other facts. They say they are "*informed*" that Goodman has been in this country but about a year; that they are "informed" he has been, during that time, an employee; that they are "informed" he is an unmarried man, and that since the making of the deed, Blondheim has been disposing of the goods in the store and replacing them with others. We are nowhere told from whence

this information was obtained, nor when. The whole is left in doubt; the only fact which the bill alleges, (other than the amount of indebtedness,) of which proof is offered to test its accuracy, is, that the deed is fraudulent on its face; and this, by the deed itself, is shown not to be so. It is on its face a valid instrument for a valid money consideration. On the whole we do not think this such a case of fraud, and imminent danger, as justified the court in granting the injunction, nor do we recognize it as one, (without notice to the defendants first having been given,) in which a receiver should have been appointed. We shall, therefore, in this case, reverse the order of the court below granting an injunction and appointing a receiver upon the original bill, and dismiss the appeal from the order granting the injunction upon the amended bill, because taken before answer filed to such bill. The cause will also be remanded for further proceedings.

*Order reversed and cause remanded.*

Tuck, J.—I dissent from so much of the court's opinion as places a construction on the act of 1853, ch. 374.

I think the appeal does not remove the injunction out of the defendants' way, so as to place him in the same condition, in reference to the property, as if the writ had not issued, but that it merely stays further proceedings, pending the appeal, and leaves the property just where it was at the time of the appeal.

This I consider the effect of the last clause of the act, which limits the effect of such appeals, to that produced by an appeal from a final decree, which, as I understand the law, arrests the execution of the decree, and does nothing more.

As to the other views expressed by the court, I concur in the opinion, and, in the order of reversal.