WM. J. JOHNSTON ET AL. *vs.* AGNES J. LIPPERT ET AL.

*Receiver Not to be Appointed Before Answer of Defendant Except
When Necessary to Preserve Property.*

A receiver should not be appointed to take charge of property before the
defendant is heard in response to the application unless the party apply-
ing for the appointment shows that he has an interest in the property
and that there is imminent danger of its loss or injury unless possession
be taken by the Court.

Plaintiff's bill in this case alleged that her brother, one of the defendants
induced their mother shortly before her death to execute three deeds
conveying different portions of her property to the plaintiff and plaintiff's
brother and sister (the defendants); that the effect of these deeds was
to make an unfair distribution of the decedent's estate among her chil-
dren, giving to defendants more than their share; that at the time of
their execution the mental condition of the deceased was such as to
render her incapable of making a valid deed, and that these deeds had
been procured by undue influence exerted by one of the defendants.
The bill charged that the defendants had taken possession of the prop-
erty and prayed that the deeds be vacated and annulled, and in the
meantime for an injunction to restrain defendants from disposing of the
property thereby conveyed and for a receiver to take charge of the
same. The Court below granted an injunction as prayed and appointed
a receiver before the defendants had answered or any testimony been
taken. *Held*, upon appeal from these orders, that since the defendants
are in any event entitled to two-thirds of the property in question, and
it is not shown that it is in danger of being lost or put beyond the reach
of the process of the Court upon a final adjudication, and the allega-

tions of the bill as to undue influence and the value of the property conveyed are vague, there is no such case of imminent danger or stringent necessity stated as authorized the appointment of a receiver before the defendants are heard.

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Frederick C. Cook* (with whom was *D. H. Emory* on the brief), for the appellants.

*Armstrong Thomas* (with whom was *C. M. Trueheart* on the brief), for the appellees.

JONES, J., delivered the opinion of the Court.

Rachel A. Johnston, late of Baltimore City, died intestate in that city about the 19th of June, 1902, leaving surviving her a son, William J. Johnston, and two daughters, Mary Ellen Kellen and Agnes J. Lippert. The last-named daughter and her husband, John G. Lippert, are the plaintiffs in this cause, and the son and the other daughter of the deceased are the defendants. On the 26th of August, 1902, these plaintiffs filed in the Circuit Court No. 2, of Baltimore City, their bill of complaint in which they allege the death of Rachel A. Johnston on the 19th of June, 1902; that she was possessed of a considerable personal estate consisting of leasehold properties and chattels in the city of Baltimore ; that the plaintiff, Agnes J. Lippert, Mary Ellen Kellen and William J. Johnston are the children of the deceased and the only persons entitled to participate in the distribution of her estate ; that on the 18th day of June, 1902, " when the mental condition of the said Rachel A. Johnston was such as to render her incapable of executing a valid deed or contract, and when she was unable to recognize persons in her room (and well known to her) the said William J. Johnson * * presented to her for execution four deeds, one * * purporting to convey to the said

William J. Johnson the leasehold interest in five lots of ground of the value of about $5,000, another purporting to convey to the said Mary Ellen Kellen the leasehold interest in four lots of ground of the value of about two thousand, nine hundred and fifty dollars, and the third purporting to convey to * * Agnes J. Lippert (plaintiff) the leasehold interest in three lots of ground of the value of about two thousand dollars, and a bill of sale purporting to convey to the said Mary Ellen Kellen certain household furniture and a stock of goods of the value of about twelve hundred dollars, and by undue influence practiced upon the said Rachel A. Johnston obtained her mark to said conveyances ; that the said Rachel A. Johnston when of sound mind was able to write her name, and would have signed and sealed said papers if in sound mind and it had been her wish to do so ; that the effect of said conveyances if permitted to stand would be to make an inequitable and unjust division of the personal estate of the said Rachel A. Johnston among her said children to the injury and prejudice of" the plaintiff, Agnes J. Lippert " and contrary to the expressed wishes and intention of the said Rachel A. Johnston ;" " that the said William J. Johnston without the authority of the Orphans' Court of Baltimore City assumed and exercised the right to collect the rents from, and manage all the property of the said Rachel A. Johnston " and refused information to the plaintiff, Agnes J. Lippert, " as to the extent or disposition of the estate of the said Rachel A. Johnston until the 9th day of August, 1902, when, upon notice of contest, the said William J. Johnston applied for letters of administration upon the estate of said Rachel A. Johnston, and qualified as such administrator by filing a bond in the penalty of seven hundred dollars ; that upon application for letters of administration the said William J. Johnston informed the Judges of the Orphans' Court that the personal estate of the said Rachel A. Johnston consisted of but a small amount of cash amounting to three hundred and nine dollars and thirty-six cents ; that said administrator has refused to account to the Orphans' Court for the property purporting to have been

conveyed by deeds and bill of sale and has refused to take
necessary legal proceedings to have said conveyances set aside
and annulled that the property might be brought into the
Orphans' Court for distribution ; that William J. Johnston and
Mary Ellen Kellen have entered into possession of the prop-
erties purporting to have been conveyed to them respectively
and that Mary Ellen Kellen has taken possession of the stock
of goods purporting to have been conveyed to her by the bill
of sale and is selling and disposing of the same and comming-
ling the same with goods purchased by her.

The bill then prays that the deeds and bill of sale referred
to therein be set aside and declared void and of no effect ; that
an injunction may be granted restraining the defendants from
disposing of any of the property covered by the deeds or bill
of sale to them ; that a receiver be appointed to take charge
of all the said property, and to collect the rents and profits
therefrom and manage the same pending the litigation ; that
the Court assume the administration of the estate of the de-
ceased intestate ; and that the defendants be required to ac-
count. There were filed with the bill as exhibits certified
copies of the deeds and bill of sale referred to therein. On
the day the bill was filed the Court below granted a prelimi-
nary injunction ; and on the 16th day of September, 1902,
without any intermediate proceedings and without notice to
defendants passed an order appointing a receiver as prayed in
the bill. From these orders the present appeal was taken by
the defendants after having filed their answer.

The allegations of the bill have been fully set out because
the appeal challenges the sufficiency of these allegations to
sustain the orders appealed from, and we are not permitted in
the present attitude of the case to look beyond the bill and
exhibits to determine this question. *McCann* v. *Taylor,* 10 Md.
415; *Blondheim et al.* v. *Moore,* 11 Md. 365; *Lamm & Hughes*
v. *Burrell,* 69 Md. 272. It will not be necessary to multiply
authorities to ascertain the principles or rules of law that are
to guide an inquiry of this character. In the case of *Blond-
heim et al.* v. *Moore, supra,* it was said in reference to the

power of the Court to appoint a receiver "1st. That the power of appointment is a delicate one and to be exercised with great circumspection.    2nd. That it must appear the claimant has a title to the property, and the Court must be satisfied by affidavit, that a receiver is necessary to preserve the property. 3rd. That there is no case in which the Court appoints a receiver merely because the measure can do no harm.    4th. That fraud or imminent danger, if the intermediate possession should not be taken by the Court, must be clearly proved. And 5th. That unless the necessity be of the most stringent character the Court will not appoint until the defendant is first heard in response to the application."    And in the more recent case of *Lamm & Hughes*, 69 Md. *supra*, it was said "that to warrant the Court in issuing an injunction a full and candid disclosure of all the facts must be made.    There must be no concealment and the *res gestae* must be represented as they actually are.    *    *    The Court must be informed by the bill itself and its accompanying exhibits, if any, of every material fact constituting the case of the plaintiff, in order that it may be seen whether there is a just and proper ground for the application of so summary a remedy.    Strong *prima facie* evidence of the facts on which the plaintiff's equity rests must be presented to the Court."

These propositions may be regarded as settled in the decisions of this State.    The application of the principles thus enunciated in any given case is addressed to the sound discretion of the Court.    The bill here charges that the deeds which are sought to be annulled, if allowed to stand will make an "inequitable and unjust division" of the property, which is the subject of this controversy, among the children of Rachel A. Johnston.    The deeds that are attacked make division of the property left by the said deceased among all three of the children, each gets a portion.    Inequality of division therefore must arise from a difference in amount and value of the several portions, and the real subject of contention is, not the whole property, but that amount of it which represents this difference of amount and value that makes the inequality.    The

defendants are shown to be in possession of the property conveyed to them by the deeds, and until the deeds are set aside they are invested with the legal title to it.    They have an undoubted right to two-thirds of the whole property, subject to rights of creditors, as next of kin to their mother—assuming the deeds to be invalid.

It will thus be seen from the allegations of the bill as to values that the amount of property really involved in the contention here bears but a small proportion to the whole property which is affected by the orders here under review ; and to the larger part of which—two-thirds of the whole—the defendants have an undoubted right.    This being the situation with respect to the property involved in the controversy and the rights of the parttes therein, what appears as a basis for summary process ?    In the first place the valuation given to the properties embraced in the several deeds referred to in the bill appears as resting on the bare assertion of the pleader.    There is nothing to show that the values assigned to the respective properties are anything more than mere arbitrary statements of value.    No *prima facie* evidence is adduced, and no fact is stated in that connection, going to give color to the values assigned.    In respect to one of the defendants, Mary Ellen Kellen, there is no charge that she has been guilty of, or was in any way connected with, any improper act in acquiring title to or possession of, the property in controversy.    It is alleged that the defendant, William J. Johnston, had refused to account to the Orphans' Court for the property embraced in the deeds.    This he was not required to do if the deeds were, as he claimed them to be, valid.    It is further alleged that the defendants had entered into possession of the properties purporting to have been conveyed to then respectively by the deeds that are assailed, and that the defendant, Mary Ellen Kellen, had taken possession of the stock of goods purporting to have been conveyed to her by the bill of sale, and was selling and disposing of the same and commingling them with goods since purchased by her.    This the defendants had a perfect right to do if the deeds and bill of sale were valid conveyances.

How does the bill attempt to show color or support for the claim that the deeds were not good legal conveyances ? Only by the general averments that the grantor therein was, at the time the deeds purported to have been executed, in a mental condition to render her incapable of executing a valid deed or contract ; and that, being in that condition, the deeds were obtained by undue influence practiced upon her. The vagueness of this charge is apparent from the inconsistency involved in it. Undue influence presupposes mental capacity to do the particular act which its exercise brings about. *Stirling* v. *Stirling*, 64 Md. 138 (see p. 151.) In cases involving questions of the existence *vel non* of capacity to execute a valid deed or contract, or of undue influence it is the well recognized province of the Court to define what facts will constitute or be sufficient to show, the one or the other as the case may be ; and these facts must be found, and when found mental incapacity to the extent sufficient to avoid the act in question in the particular case, or undue influence is a result deduced from them. So in a case of this nature, where as we have seen there must be made " a full and candid disclosure of all the facts " and " the *res gestae* must be represented as they actually are " it is not sufficient as affording a satisfactory basis for summary action for the pleader to characterize for himself the mental condition that may exist in the particular case as one that renders· the subject of it incapable of executing a valid deed or contract; or the influence, that may be present to affect the act performed, as undue influence, without the allegation or disclosure of facts necessary to enable the Court to see whether the conclusions of the pleader have a reasonable and probable basis. In the bill which brings up this controversy no fact is alleged going to show the mental condition of the grantor in the deeds in question at the time of their execution by her other than that " she was unable to recognize persons in her room (and well-known to her) " which may have been due to other causes than the absence of a capacity to execute a valid deed or contract. In respect to undue influence it is merely alleged that while the grantor was in the mental condition,

alleged by the pleader, the defendant, William J. Johnston " presented to her for execution four deeds * * and by undue influence practiced upon " her " obtained her mark to said conveyances." No act or conduct on the part of this defendant that amounted to, or which shows undue influence, as the law defines it is made to appear. Again it is not shown that the property in question here is in danger of being wasted or lost or of being put beyond the reach of the process of the Court upon a final adjudication between parties " if the intermediate possession should not be taken by the Court." No act or even threat on the part of the defendants, suggestive of any such danger, is alleged or charged. It is merely alleged that they are in possession of the property exercising the ordinary rights pertaining to ownership. The bill prays, in addition to asking that the deeds to the property be set aside, that the defendants be required to account; and it is not alleged that they are insolvent or would not be able to respond to such final decree as might be passed against them in the cause. On the contrary it appears that they would be able to so respond. In short no such fraud or condition of imminent danger or stringent necessity is made to appear as to warrant the appointment of a receiver before the defendants were " heard in response to the application." Some other aspects of the case were referred to in the argument which it is not necessary to discuss. It follows that the orders appealed from must be reversed.

*Orders reversed with costs to the appellants.*

(Decided February 11th, 1903.)