## THE BALTIMORE TRUST COMPANY, Receiver, *vs.* GEORGE'S CREEK COAL AND IRON COMPANY.

*Receivers: appointment. Stock certificates: in name of "trustee"; unknown trust. Trusts: devolution of trusteeship upon heir. Jurisdiction: objection by answer, demurrer or at hearing.*

Unless the necessity be of the most stringent character, a receiver should not be appointed until the defendant is first heard in response to the application.                    p. 30

The duty is not imposed upon a corporation to invest dividends due to its stockholders or to pay interest upon such dividends.                    pp. 30-31.

Loss of interest arising from the failure or neglect of the stockholder to claim dividends that have been declared is no ground for the appointment of a receiver.                    p. 31

Under sec. 80 of Art. 23 of the code (1912) upon the dissolution of a corporation, otherwise than by judicial proceedings, directors become personally and severally liable to the stockholders and creditors, as trustees, until the appointment of a receiver.                    p. 31

The addition of the word *"trustee"* after the name of a stockholder on a certificate and the stock book of the corporation, gives notice of the existence of a trust.                    p. 31

Corporations are bound to see that trust property in their custody is protected and not misappropriated.                    p. 32

Failure of the principal to appear and claim the stock or dividends, raises no presumption of personal ownership in a person named in the certificate as a trustee.                    p. 33

Trusts of real estate, upon the trustee's death, devolve upon his heirs at law.                    p. 34

Trusts of personalty devolve upon the executor or the administrator for the preservation of the title, until the appointment of a new trustee.                    p. 34.

Where the trust estate has been *in course of administration* by the deceased trustee, it is the duty of the executor or admin-

istrator to render an account of the trusts, and in such cases it would be proper, and perhaps necessary, that the executor or administrator should be a party to a proceeding for the appointment of a new trustee. p. 34

But the rule has no application to property that was never in the trustee's possession. p. 34

For some seventy years certain shares of stock had stood in the name of T. A., "trustee." None of the dividends declared by the corporation had ever been collected by said T. A. nor had scrip dividends allotted ever been receipted for by him or the stock transferred; there was no evidence to show for whom T. A. was trustee; after T. A. was long dead, and his estate wound up, the Baltimore Trust Company was appointed administrator *c. t. a.* of T. A., and by an *ex parte* proceeding was appointed receiver with power to receive a new certificate for said stock and all dividends, etc., with authority to receipt for the same; such receiver filed a bill against the corporation to compel the issue of a new stock certificate, etc., that it might protect the same for account of the owner; on appeal from an order dismissing said bill it was *held that,* the corporation was interested in the disposition of such shares of stock, and that it was proper for it to refuse to issue and deliver to such a receiver a duplicate certificate, until it was determined by a Court of competent jurisdiction that the stock standing in the name of T. A. in trust, was the property of T. A. at the time of his death, in his own right. p. 39

The objections on the ground of want of jurisdiction, or want of capacity of a plaintiff may be made by demurrer, plea or answer, or may be taken advantage of at the hearing. p. 35

*Decided November 20th, 1912.*

Appeal from the Circuit Court for Baltimore City (Bond, J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Thomas, Pattison and Stockbridge, JJ.

*Stuart S. Janney* (with a brief by *Ritchie & Janney*), for the appellant.

*Shirley Carter* (with whom were *Bernard Carter & Sons* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City dismissing a bill filed by the Baltimore Trust Company, a corporation of the State of Maryland, as receiver, against the George's Creek Coal and Iron Company, also a corporation, of the State of Maryland, the ground of the dismissal being want of jurisdiction in the Court to entertain the proceeding.

The bill alleges:

*First*—That 58 shares of the capital stock of the defendant company stand in the name of Tilly Allen, of New York, in trust, and has so stood since March 22nd, 1841, under the certificate therefor issued on that date.

*Second*—That on September 29th, 1911, The Baltimore Trust Company, administrator *c. t. a.* of the estate of Tilly Allen, deceased, filed an *ex parte* petition in the Circuit Court of Baltimore City, alleging the fact just stated, the death of the said Tilly Allen about August 18th, 1862, leaving a last will and testament, and the appointment of the petitioner as administrator *c. t. a.* of his estate; praying for the appointment of a receiver to reduce to possession by demand, suit or otherwise, said 58 shares of stock and all cash, bonds or script representing the same, to be administered to the best advantage of all concerned under the jurisdiction of said Court; and that the petitioner was accordingly appointed such receiver by an order of said Court passed September 29th, 1911.

*Third*—That pursuant to the authority contained in said order, the Baltimore Trust Company applied to the George's Creek Coal and Iron Company for the issue of a new certificate for said 58 shares of stock to be made out in the name

of the receiver, the original certificate having been lost or destroyed.

*Fourth*—That said George's Creek Coal and Iron Company, being advised by counsel that it was not its duty to issue such new certificate, refused to issue the same.

*Fifth*—That the receiver was advised by its counsel that it was its duty to institute proceedings to require the issuance of such new certificate.

The prayer of the bill was that an order should be passed requiring the defendant to issue and deliver to the receiver such new certificate, and to pay to the receiver all dividends due and unpaid thereon; and for an injunction restraining the defendant from issuing a new certificate for said 58 shares of stock, or from paying any new stock, bonds, scrip or cash payable or distributable thereon, to any party other than said receiver.

An order was accordingly passed requiring the defendant to show cause why it should not be directed to comply with the demand of the receiver.

There was filed with the bill as an exhibit, and as part thereof, a copy of the petition above mentioned, the substance of which is necessary to be stated, in order to have a proper understanding of the whole controversy.

This petition after making the allegations before mentioned, further alleged that said certificate had been lost or destroyed, and the only evidence in the possession of the George's Creek Coal and Iron Company, or information as to the form of said certificate, was the entry in the Stock Ledger, all of its other books and records having been destroyed by the great fire of February 7th and 8th, 1904.

That said Tilly Allen by his last will and testament gave his entire estate to his son John Hazard Allen, who was made sole executor, a copy of said will being filed with the petition.

That John Hazard Allen died March 2nd, 1906, intestate and without issue, but leaving a widow, Mary C. Allen, residing at East Orange, New Jersey. That in the settlement of

the estate of Tilly Allen made by said executor, no mention was made of said stock either in the inventory, or otherwise. That in 1910 one of the directors of the defendant company, for the purpose of ascertaining who was entitled to said stock, caused advertisement to be made in certain newspapers published in New York City and in Brooklyn, asking for information concerning said Tilly Allen, and that Mrs. Anna V. S. Hazard Allen responded thereto, and an exhaustive investigation was then made for the purpose of ascertaining the surviving relatives of Tilly Allen who might by possibility be entitled to said stock, and to ascertain whether any trust in respect thereto really existed and if so its character, and who were the beneficiaries. That the only practical result of such investigation was to disclose the fact that Tilly Allen left two sons by a first wife, Mary Cutler, both of whom died many years ago, and that the probate records at their respective residences disclose no will or administration. That by his second wife, Mary Hazard Merritt, who died in 1833, Tilly Allen left three children. two of whom have been dead many years, and John Hazard Allen before mentioned, who died intestate in 1906, leaving a widow, Mary C. Allen, and that the only living persons having or being likely to have any information as to said stock are Mary C. Allen and Anna V. S. Hazard Allen.

That Mary C. Allen, widow of John Hazard Allen, knew Tilly Allen, but has no knowledge or information of any stock held by him in trust, though she recalls that at the time of his death there was some talk in the family that he owned some worthless stock, the name of which she did not know or hear.

That Anna V. S. Allen has no knowledge or information as to any stock owned or held by Tilly Allen as trustee. but that her father, John Van Schoonhaven Hazard, was once a business partner of Tilly Allen; that her father failed in business about 1837, and afterwards said he could not on that account hold property in his own name, and that her mother had said she had then given up her property, but

that it would come back to her children; that it had never come back to them, and "she thinks it possible on speculation and surmise" that Tilly Allen may have held this stock upon some trust for them.

That the inventory of Tilly Allen's estate showed stocks in various companies, but that a number of those companies are now out of existence, and there is nothing to show whether these stocks were held by him in trust; that at the time of his death he was agent for one Anson G. Phelps, of Phelps, Dodge and Company, of New York City, but that no light has been obtained from that quarter.

That beginning with 1864, 83 separate dividends have been declared on said stock, and in 1910, a reduction of capital stock was made, and several liquidation dividends were declared and paid to stockholders, and a distribution made to them of bonds and scrip, but all these in respect of said 58 shares of stock are retained by the defendant for whoever may be entitled thereto, and the total of said cash dividends is now $20,952.50 and the total value of such bonds and scrip is now $14,236.35, in all of which the petitioner asserts the defendant company has no claim or interest. That during all this period no one has ever laid claim to said stock and dividends or ever communicated with the defendant company in respect thereto.

The petitioner then avers that it *believes* no trust ever existed in respect to said 58 shares of stock, but that the same belonged absolutely to said Tilly Allen, all of his debts having been paid by his executor.

"That even if, by chance, some trust does exist with respect to such stock, then in the absence of any claim by anyone interested thereunder, it is the right and duty of the petitioner, as administrator *c. t. a.* of Tilly Allen, to take possession of the same, and to retain, preserve and protect it for account of the true owner.

That the petitioner nevertheless realizes that the fact that this stock stands in the name of Tilly Allen, *in trust*, raises a question as to its right to recover the same as administrator

*c. t. a.* of Tilly Allen, but that there can be no doubt whatever of its duty as such administrator to protect said stock and fund and "to put in motion the proper machinery of the Court, to the end that the property may be ultimately distributed to those entitled thereto."

That if the property is permitted to remain in the hands of the defendant company, there will be a loss to the ultimate owners as no interest will be allowed upon the $20,952.50 representing cash dividends; and moreover that said company is now in liquidation, has distributed the greater part of its assets to its known stockholders and will shortly distribute the remainder, and will then have no assets at all, and no financial responsibility, and the petition closes with the prayer for the receiver which was granted as stated. A copy of said bill of complaint, exhibits and order, having been served on the defendant company, its answer was promptly filed admitting the preliminary allegations of the bill, but alleging that the appointment of the receiver having been made, as shown by the exhibit, in an *ex parte* proceeding, without any notice to the defendant of such application, and without opportunity to be heard in opposition thereto, that the order of appointment was improvidently made, and should be forthwith stricken out, and the bill of complaint be dismissed.

The defendant, however, tendered itself ready, upon the dismissal of the bill of complaint, to answer forthwith the allegations of the *ex parte* petition, if made in a bill of complaint filed in that Court by Baltimore Trust Company, administrator *c. t. a.* of Tilly Allen, deceased, to which the defendant should be made a party defendant; and in order to inform the Court what its answer would have been to said *ex parte* petition, if an opportunity to answer had been given and what its answer will now be if given an opportunity to answer the same, it proceeds to set out in detail what such answer would be. It admitted the facts averred as such in paragraphs 1, 2, 3, 4, 5. It said it had no knowledge of the averments of paragraphs 6, 7, 8, 9 and 10 and neither

admitted or denied the same, except the averment that no dividends were made before 1864, which it admits.

It admits the averments of paragraph 11, relating to the number of dividends declared, the reduction of the capital stock, and the distribution of bonds and scrip upon said 58 shares of stock, the amount of such dividends and of such bond and scrip, and their retention by the defendant for whoever may be entitled thereto, but it does not admit that the defendant has no claim to, or interest in said 58 shares of stock, and it alleges that the number of shares of stock now standing in the name of Tilly Allen in trust, though originally 58 is now 116, the number of shares of all the stockholders having been doubled in recent years.

It admits the averment of the 12th paragraph that during all these years, no demand has been made by any beneficiary for said stock, dividends, bonds or scrip, but denies the averment that the absence of such demand is any more evidence that said stock was not held in trust, than that it is owned by a relative or next of kin of Tilly Allen.

Answering the 13th, 14th, 15th and 17th paragraphs, as to the belief of the petitioner that the property in question belonged absolutely to Tilly Allen, as to the petitioner's averment, that even if any trust exists, it is its duty to take possession thereof for the actual owner; as to the refusal of the defendant to issue and deliver a new certificate; as to the petitioner's claim that though there is a question of its right to recover the property, it is yet its duty to put in motion the machinery of the Court for the distribution of the property to those entitled thereto; and as to the averment that the defendant ought not to be permitted to remain in possession of the property because no interest will be allowed on the cash dividends, and because the defendant is in liquidation, and its assets will soon be all distributed; the defendant says, that even if it were proper for a receiver to be appointed the petitioner would not be a proper appointment, because his interest and duty as administrator of

Tilly Allen, is to assert the private ownership of said Allen, rather than the trust ownership in which it stands, and that any receiver appointed should be impartial upon that question; and the defendant says it is ready forthwith to have said stock, dividends, etc., invested under the order of the Court.

Further answering, the defendant refers to certain proceedings pending in the same Court against it upon a bill filed by Edward E. Montell and others, stockholders of the defendant, in reference to the disposition of the stock standing on the books of the defendant in the name of Morris Robinson, agent (being the same stock which was the subject of controversy in *Tyson, Adm. of Morris Robinson,* v. *The George's Creek Coal and Iron Company,* 115 Md. 564), and says that for the reasons given in its answer in said case, it is not necessary that a receiver should be appointed in this case; but that all the questions herein can be determined under proceedings taken by this corporation under the direction of this Court without the appointment of a receiver, and without burdening the property representing the stock standing in the name of Tilly Allen, in trust, with receivers' commissions; the president of the defendant having offered to render without compensation all services which could be performed by a receiver.

The defendant, further answering, suggested that the Court should by its order, direct the defendant to give notice to the administrator of Tilly Allen, and to all others claiming said stock in any way, to file their claims thereto by a day to be named in said order, or else be thereafter forever barred, and that the Court, after such notice, proceed to determine upon the validity of said claims, or that if it should be thought proper that a receiver should be appointed at all, that the same receiver should be appointed in this case as in the *Montell Case* before mentioned, and that the receiver's services in both cases should be compensated by reasonable salary instead of the allowance of commissions.

The defendant further prays that if the Court should dismiss the bill in this case, and allow the receiver to file

another bill in lieu of said *ex parte* petition, his answer in this case may be taken as an answer to such new bill, or if in the judgment of the Court it will be more conducive to efficient dealing with the ownership of these 58 shares of stock, that said new bill so to be filed shall be dismissed, and the administrator *c. t. a.* of Tilly Allen shall be made a co-plaintiff with said Montell and others in the bill filed by them, that the Court will so order.

The case was heard on the motion to dismiss incorporated in the answer, and the Court being of opinion that it was without jurisdiction to pass the order of September 29th, 1911, upon said *ex parte* petition, and also that "the plaintiff is not entitled to receive the stock and dividends thereon and the other things as prayed in the bill of complaint in this cause from the defendant," the bill was dismissed.

It thus appears from the language of the decree, that the Court considered and determined two questions: (1) the propriety of the appointment of a receiver upon the *ex parte* petition, and (2) whether, if the receiver had been appointed, only after notice to defendant, and opportunity to be heard, the receiver had established its right to the stock and dividends.

As to the first question little need be said. A fundamental rule of equity is that "unless the necessity be of the most stringent character, the Court will not appoint a receiver until the defendant is first heard in response to the application." *Blondheim* v. *Moore,* 11 Md. 374; *Johnston* v. *Lippert,* 96 Md. 588. It cannot be contended that any real necessity whatever existed in this case for the appointment of a receiver upon an *ex parte* petition without notice or hearing. *Anderson* v. *Cecil,* 86 Md. 493; *Baker* v. *Baker,* 108 Md. 277. The only attempts to show any necessity are found in the following allegations: (1) that there will be a loss to the ultimate owners, if the property is permitted to remain in the hands of the defendant, since no interest will be allowed by it on the cash dividends of $20,952.50. But there is no duty imposed upon corporations to invest divi-

dends due their stockholders, or to pay interest thereon, and loss of interest arising from the neglect or omission of the stockholder to claim dividends can hardly be held to constitute the necessity for a receiver; (2) that the company is in liquidation, has distributed the greater part of its assets, and will shortly distribute the remainder so that it will have no assets at all and no financial responsibility for the proper care of said property, or to prevent its loss, waste or diversion. If this ground were otherwise tenable it is fully answered by sec. 80 of Art. 23, which provides that where a corporation is dissolved otherwise than by judicial proceedings, and until other persons are appointed as receivers by competent authority, the directors at the time of the dissolution become trustees for the creditors and stockholders and are made jointly and severally liable to the creditors and stockholders to the extent of its property which should come into their hands. The appellant relies, upon this point, upon the language of the Court in *Voshell* v. *Hynson,* 26 Md. 94, where it is said that the rule laid down in *Blondheim* v. *Moore, supra,* is one which can only be enforced upon appeal directly from the order appointing a receiver. But in the case before us, the *petition for a receiver,* and the *order appointing one,* is made a *part of the bill* and *that order* is thus brought before the Court on this appeal.

The appellant also contends that no notice was required to the defendant, and no injury could be wrought by the *ex parte* appointment, because no receiver was appointed for *the defendant* and none of its *property* was or can be, taken from its possession by such appointment, and that the defendant corporation has no interest in the property in question here, or in its possession, nor in any dispute as to the ownership of these shares of stock and their accretions. But this contention is opposed to clear authority. In *Bank* v. *Lange,* 51 Md. 144, this Court following the law laid down in *Shaw* v. *Spencer,* 100 Mass. 382, held that the addition of the word, *trustee, after* a name gave notice of a trust, and this was approved in *Swift* v. *Williams,* 68 Md. 256, and again in

*Marbury* v. *Ehlen,* 72 Md. 216, where it was held that "the corporation is the custodian of the stock and clothed with power to protect all persons interested from unauthorized transfers, and that it is the duty of the corporation to exercise diligence in the discharge of its trust to see that unauthorized transfers are not made to the prejudice of *cestuis que trustent,*" * * * And "that it is bound to see that the trust property in its custody was protected and not misappropriated." It is therefore quite clear that the defendant corporation is interested in the dispute as to the ownership of these shares of stock, and that there was manifest propriety and prudence in its refusal to issue and deliver to the plaintiff a duplicate certificate for said shares of stock, until it was determined by a Court of competent jurisdiction that said stock, standing in the name of Tilly Allen *in trust,* was the property of Tilly Allen at the time, of his death, *in his own right.*

This inquiry constitutes the second question, the substantial and vital question in the case.

The gist of the appellant's ingenious and earnest argument upon this question may be best stated in the following extract from his able brief:

"The certificate of stock standing in the name of Tilly Allen, of New York, in trust, either constitute a trust fund which Tilly Allen held in trust for some unknown beneficiary or beneficiaries, or it constituted a part of his own estate, the words "in trust" being placed upon the stock for some personal reason.

The petition for the appointment of receivers sets forth the efforts that were made to discover any trust to which the stock might belong, and we respectfully submit that the failure of these efforts to disclose any such trust is *prima facie* evidence that none exists.

In such event the stock and that which it represents, are a part of the estate of Tilly Allen, and the administrator *c. t. a.* is entitled to take steps for the protection thereof."

The theory here presented, is that the failure of the appellant's efforts recited in the *ex parte* petition for a receiver, to discover some *cestui que trustent,* is *prima facie* evidence that there was no trust, and that the stock belonged to Tilly Allen in his own right, and *therefore* the administrator *c. t. a.* of Tilly Allen has such an interest as entitles him to apply for a receiver. But this contention is in conflict with what was decided in *Tyson* v. *George's Creek Coal and Iron Company, supra;* for, with respect to the words "agent" and "trustee", in so far as the question is whether the stock in this case was held in trust or in his own right, there is no ground for discrimination. In the *Tyson Case, supra,* the Court reached its conclusion that the word "agent" was notice of an agency, and that the stock was not held in his own right, in reliance upon the decisions in *Marbury* v. *Ehlen,* 72 Md. 206, and *Swift* v. *Williams,* 68 Md. 255; where the word "trustee" was held to give notice of a *trust.* The *Tyson Case* also held that the burden of proof was not upon the corporation to prove who was the principal and for the same reason the burden is not upon the corporation here to prove *who* was the *cestui que trust.* The *Tyson Case* also held that mere lapse of time after failure of the principal to appear and claim the stock, or dividends, raised no presumption of personal ownership in the person named in the certificate as agent. Nor does it in this case raise such presumption against the *cestui que trust.*

It was also held in that case that the entry on the books of the company was a continuous assertion that the stock was not the private property of Morris Robinson and prevented the application of limitations, and that the stock did not pass to Morris Robinson's administrator. All those findings in that case are applicable in this case, and are conclusive against the appellants that the stock in this case constituted no part of Tilly Allen's own estate.

But the appellant further contends that even if we should conclude that the fact that the stock hands in the name of "Tilly Allen in trust", constitutes presumptive evidence that

he held it in a purely fiduciary capacity for another, and that the failure to discover and identify a *cestui que trust,* does not overthrow that presumption, still there can be no doubt that it is both the right and duty of the administrator *c. t. a.* to take steps for the protection of the fund until a new trustee be appointed.

The general principle is not questioned that trusts of real estate upon the trustee's death, devolve upon his heir at law, and trusts of personalty devolve upon the executor or administrator *for the preservation of the title, until the appointment of a new trustee,* and that where the trust estate has been in a course of administration by the deceased trustee, that it is the duty of the executor or administrator to render an account of the trust; *and in such case,* it would be proper, and perhaps neccessary, that the executor or administrator should be a party to a proceeding for the appointment of a new trustee. But this is not such a case. Here, the record shows that none of the assets of the trust ever were in the hands of Tilly Allen as trustee. The stock certificate presumably was in his possession, but all the cash dividends, bonds and scrip in controversy are and always have been in the possession of the defendant company and there is no settlement that could be made or refused by the representative of the deceased trustee. There is no question of commissions or expenses, to be allowed the trustee and no possible beneficial interest whatever in the trustee. Hence, in *Offutt* v. *Jones,* 110 Md. 238, it was held not necessary to make the executor of a deceased trustee a party to a proceeding for a new trustee. This case comes within the principles of *Sellman* v. *Sellman,* 63 Md. 520, and *Hamilton* v. *Traber,* 78 Md. 26. In the former case, certain children and grandchildren of their living father and grandfather filed a bill in equity to set aside certain deeds made by him on the ground of undue influence in their exception, claiming that on his death the property might by possibility descend to them. The bill was dismissed on the ground that to sustain a bill the plaintiff must show "an interest in the

subject to the suit, or a right to the thing demanded, and proper title to institute the suit concerning it."

In the latter case, the niece of Mrs. Traber filed a bill alleging that her aunt was mentally weak and incapable of managing her estate, and that it would be to her aunt's interest and advantage that her real estate be sold, and a sale was ordered and made. On exceptions filed by the purchaser, it was shown that the niece had no interest whatever in the subject-matter of the proceeding, and that "without being beneficially concerned in the property herself" she sought to take it out of the possession of the defendant and have it sold. The sale was set aside, the Court declaring that the plaintiff was a mere volunteer; that the Court was entirely without jurisdiction to order the sale, and that the decree for sale was a pure nullity. In the present case we think it is quite plain that the petitioner has no such legal or equitable interest in the subject-matter of the petition as would warrant him in asking for a receiver; that he was nothing more than a mere volunteer, and that the Court consequently was without jurisdiction to appoint any receiver, and its order of appointment was a nullity. Objection on the ground of want of jurisdiction or the capacity of the plaintiff may be made by demurrer, plea, answer or taken advantage of at the hearing. *Tarlar* v. *Gibbs,* 24 Md. 338.

So without further prolonging this opinion by consideration of the numerous authorities cited in the able brief of the appellant we must affirm the decree.

> *Decree affirmed, with costs to the appellee*
> *above and below.*